THE STATE OF FLORIDA, ex rel. W. P. DOUGLASS, *Relator,* v. THE BOARD OF PUBLIC INSTRUCTION FOR THE COUNTY OF DUVAL, et al., *Respondents.*

En Banc.

Opinion Filed June 25, 1929.

*Thomas B. Adams* and *Martin H. Long,* for Relator.

*James Royall* and *W. J. Findley,* for Respondents.

## STATEMENT

WHITFIELD, J.—An alternative writ of mandamus issued by this Court alleges in effect that under Chapter 7808, Acts of 1919, as amended by Chapter 9135, Acts of 1923, Section 688, Comp. Gen. Laws 1927, on or about July 1, 1928, "the relator was duly and lawfully appointed as attendance officer of the board of public instruction for the County of Duval, State of Florida, for the period of one year, beginning July 1, 1928;" "that relator accepted said appointment and employment by said board, and thereupon entered upon the performance of his duties as such attendance officer; that on the 21st day of January, A. D. 1929, the said Board of Public Instruction, by the affirmative votes of said W. F. Bunch and J. C. Coppedge, Sr., arbitrarily, without cause, and without advising or informing the relator that he had in any way neglected or failed to perform his duties as such attendance officer, under the laws of the State of Florida as aforesaid, and without preferring any charges

against him and without notice, summarily dismissed and discharged him from the employment or office as aforesaid, and appointed other persons to do the work for which the relator had been appointed as aforesaid; that no salaries have been paid to the said new appointees; that the relator, W. P. Douglass, at all times since his dismissal, as aforesaid, has been, and still is, ready, able and willing to perform, and has offered to perform, each and all of the duties pertaining to his said appointment and employment and office, but that the said respondents, W. F. Bunch and J. C. Coppedge, Sr., and the said Board of Public Instruction, acting by and through its said two members, as aforesaid, has declined and refused to reinstate the relator in his position or to permit him to perform the duties appertaining thereto; that relator's salary was payable semi-monthly in accordance with the regular custom of the Board of Public Instruction for the County of Duval; that since the semi-monthly payment of $162.50 which became due and was paid to the relator, W. P. Douglass, on January 15, 1929, respondent, W. F. Bunch, as Chairman of said Board, has refused to prepare or sign as Chairman of said Board, any further salary warrants in favor of the relator, W. P. Douglass, on account of salary to which he is entitled under the terms of his appointment and contract as aforesaid, and the said Board of Public Instruction, acting by and through its members, as aforesaid, have refused to recognize the relator, W. P. Douglass, as being any longer the attendance officer, or in the employ of the said Board or entitled to receive the semi-monthly payment on account of his salary as aforesaid; that respondent, W. Henry Bryant, was on or about the 21st day of January, 1929, after discharge of relator, as aforesaid, appointed and employed by said Board of Public Instruction as attendance officer for Duval County, Flor-

ida; that the said W. Henry Bryant, since said date has been in possession of the keys, books, records, fixtures, etc., appertaining to said office or position; that no salary has been paid to the said W. Henry Bryant as such attendance officer, although said W. F. Bunch and J. C. Coppedge, Sr., majority members of said Board, have voted to pay the same; that R. B. Rutherford, County Superintendent, has refused to sign any warrant for compensation or salary to the said W. Henry Bryant.''

The command of the writ is that the County Board of Public Instruction ''forthwith restore the relator, W. P. DOUGLASS, to the office, position and employment of attendance officer for the Board of Public Instruction for the County of Duval, State of Florida, and permit him to perform all the duties pertaining to said office, position and employment, and that you, W. F. Bunch, as Chairman of said Board, do forthwith prepare four warrants in favor of said W. P. Douglass, each in the sum of One Hundred Sixty-two and 50/100 ($162.50) Dollars, drawn upon a depository of said Board in the City of Jacksonville, Florida, where said Board has sufficient funds in its salary account to pay said warrants, and that upon the preparation of said warrants that you, W. F. Bunch, sign the same as Chairman of said Board, and thereupon forthwith deliver said warrants to R. B. Rutherford, Superintendent of Public Instruction of said County, and Secretary of said Board, for his counter signature, and the affixing of the seal of said Board to said warrants; that you, W. Henry Bryant, forthwith deliver to the relator, W. P. Douglass, the keys, books, records, fixtures, etc., appertaining to the office and position of attendance officer of Duval County, Florida; OR in default in performing the acts aforesaid you severally do show cause why you have not done so.''
The alternative writ was demurred to.

The statute contains the following provisions:

"The county board of public instruction in each county is hereby authorized and directed to appoint one or more attendance officers, as may be necessary for the faithful execution of the provisions of this Article, and to prescribe the district or territory to be under the supervision of said attendance officer or officers, and to fix the compensation of said attendance officer or officers, for the time actually employed in the performance of duties, said compensation to be paid from the county school fund. And if deemed advisable by the county board of public instruction, any supervisor or trustee of schools within the county, or any county superintendent of public instruction who gives his consent to the said county board of public instruction to serve as an attendance officer without compensation, may be appointed as attendance officer or attendance officers. The county board of public instruction is hereby authorized to remove any attendance officer who fails to perform his duties as prescribed in this Article.

"During the month of June in each and every year, it shall be the duty of every attendance officer appointed under the provisions of this Article to take an accurate census, in triplicate, of all children between the ages of seven and eighteen years in the territory or district in which he is acting; the said census to show the name, sex, age and date of birth and distance from the nearest school, of each child, the school grade completed, and the name of the parent, guardian or other person having the custody, control or charge of such children, with the postoffice address thereof; and on or before the first day of July of each and every year, one copy thereof shall be filed in the office of the coun-

ty superintendent of public instruction, one copy filed in the office of the State Superintendent of Public Instruction, and one copy shall be retained by the attendance officer, but no child over sixteen years of age is under compulsion to attend school.

"It shall be the duty of the attendance officer to serve a notice upon any parent, guardian or other person having the custody, control or charge of any child who has been absent from school in violation of the provisions of this Article, to cause said child to attend school as provided in this Article.

"It shall be the duty of each attendance officer appointed under the provisions of this Article to furnish the principal or teacher in charge of any school within the territory or district for which the attendance officer is appointed with a list of the names of all children in such district who should attend school.

"Any attendance officer appointed under the provisions of this Article is hereby authorized to enter, for the purpose of assisting in the proper enforcement of this Article, any office, factory or business house, of any nature whatsoever, for the purpose of ascertaining whether or not any child or children are enrolled or employed therein who should, under the provisions of this Article, be in attendance upon any school.

"It is hereby made the duty of the attendance officer in the territory or district over which he has supervision or for which he is appointed, to make and file in the proper court complaint in due form against any person or persons violating the provisions of this Article.

"Every attendance officer appointed under the provisions of this Article shall keep a record of all attendance notices served, all cases prosecuted, fines imposed

and other services rendered, and shall make annual report of the same to the county board of public instruction on blanks to be furnished him, and shall make reports more frequently if required by the county board of public instruction, and shall perform such other duties as shall be required of him by the county superintendent of public instruction." Secs. 688, 689, 691, 692, 693, 694, Comp. Gen. Laws, 1927.

The duties prescribed by the above-quoted statute are governmental in their nature and they may legally be performed only by a duly elected or appointed officer. See State ex rel. Clyatt v. Hocker, 39 Fla. 477, 22 So. R. 721; State ex rel. Swearingen v. Jones, 79 Fla. 56, 84 So. R. 84; State ex rel. Holloway v. Sheats, 78 Fla. 583, 83 So. R. 508.

The controlling questions are whether school "attendance officers" under the statutes of this State are officers or employees and whether if officers they may legally be appointed by the county board of public instruction.

There is a provision in Section 9 of Chapter 1722, Act of June 22, 1869, Section 16, page 906 McClellan's Digest, that "It is hereby declared that the position of school trustee, or of member of a board of public instruction for a county, and teacher, are not officers in the meaning and intent of the constitution" of 1868. This was a legislative construction of the constitution and was not controlling if in conflict with organic provisions as judicially interpreted. The quoted statutory provision was suspended and repealed by the provision of Chapter 3872, Acts 1889.

In Article X of each of the constitutions of 1837-8, 1861 and 1865, the following provisions appear:

"Section 1. The proceeds of all lands that have been, or may hereafter be, granted by the United States for the use of schools and a seminary or seminaries of learning, shall be and remain a perpetual fund, the in-

terest of which together with all moneys derived from any other source applicable to the same object, shall be inviolably appropriated to the use of schools and seminaries of learning, respectively, and to no other purpose.

"Sec. 2. The general assembly shall take such measures as may be necessary to preserve from waste or damage all land so granted and appropriated to the purpose of education."

Under the Constitutions of 1838, 1861 and 1865, common free schools were established and maintained in the several counties of the State under the direction of the Register of Public Lands for the State and the Judge of Probate in each county. See Chapter 229, Acts of 1848; Chapter 510, Acts of 1852. The constitution of 1868, and statutes enacted thereunder, provided in some detail for the establishment and maintenance of a uniform system of common schools with appropriate boards and officers. Article VIII of the Constitution of 1868 required the legislature to "provide a uniform system of common schools" * * and "for the liberal maintenance of the same." Section 3 established a State Superintendent of Public Instruction, and Section 9 constituted such Superintendent and the Secretary of State and Attorney General "the Board of Education of Florida," and provided that "The duties of the Board of Education shall be prescribed by the legislature." Section 19, Article V, Constitution of 1868, required the Governor to "appoint in each county a * * * superintendent of common schools."

Chapter 1686, Acts 1869, provides that there shall be established and liberally maintained, a uniform system of public instruction. "The officers of the Department of Public Instruction shall be a superintendent of Public In-

struction, a State Board of Education, a Board of Public Instruction for each county, a Superintendent of Schools for each county, local School Trustees, Treasurers and Agents. A Board of Public Instruction shall consist of not more than five members, to be appointed by the Board of Education on the nomination of the Superintendent of Public Instruction and the recommendation of the representatives from the county.'' As amended by Chapter 1722, Acts 1869, Section 9, Chapter 1686, contains the following: ''It is hereby declared that the position of School Trustee or of member of a Board of Public Instruction for a county, and teacher, are not officers in the meaning and intent of the constitution'' of 1868. Secs. 9, 10 and 16, p. 905, 906, McClellan's Digest. Chapters 1686 and 1722 were superseded by Chapter 3872, Acts 1889. See Secs. 225 et seq., Rev. Stats. 1892. The provisions of Chapters 1686 and 1722,, Acts 1869, and Chapter 3872, Acts 1889, as to the appointment of members of the county board of public instruction, were superseded by Chapter 4193, Acts 1893, under which latter acts the members of the county board of public instruction are elected by the people, pursuant to Section 27, Article III, Constitution of 1885, the same provision in substance being in Section 27, Article IV, Constitution of 1868. Sec. 172, Gen. Stats. 1906, Sec. 217, Rev. Gen. Stats. 1920, Sec. 252, Comp. Gen. Laws, 1927.

Article XII, Constitution of 1885, contains the following:

''The Legislature shall provide for a uniform system of public free schools and shall provide for the liberal maintenance of the same.

''There shall be a Superintendent of Public Instruction, whose duties shall be prescribed by law, and whose term of office shall be four years and until the election and qualification of his successor.

"The Governor, Secretary of State, Attorney General, State Treasurer and State Superintendent of Public Instruction shall constitute a body corporate, to be known as the State Board of Education of Florida, of which the Governor shall be President, and the Superintendent of Public Instruction Secretary. This Board shall have power to remove any subordinate school officer for cause, upon notice to the incumbent; and shall have the management and investment of all State School Funds under such regulations as may be prescribed by law, and such supervision of schools of higher grades as the law shall provide." Secs. 1, 2, 3.

Section 9, Article XII, contains a provision that the county school funds "shall be disbursed by the County Board of Public Instruction solely for the support and maintenance of public free schools." This is the only mention in the Constitution of a county board of public instruction. Chapter 3782, Acts of 1889, provides that:

"The officers of the Department of Public Instruction shall be a State Superintendent of Public Instruction, a State Board of Education, a Board of Public Instruction for each county, a Superintendent of Public Instruction for each county, local School Supervisors and Treasurers.

"A Board of Public Instruction shall consist of not more than three (3) members, no two of whom shall reside in the same Commissioners' District, to be appointed by the State Board of Education, on the nomination of the State Superintendent of Public Instruction." Secs. 226, 227, Rev. Stats. 1892; Secs. 328, 329, Gen. Stats. 1906; Secs. 440, 441, Rev. Gen. Stats. 1920; Secs. 516, 517, Comp. Gen. Laws 1927.

Chapter 4193, Acts 1893, provided for the election at every biennial general election of a County Board of Public Instruction consisting of three members. Section 4 of the Act provided that vacancies on the "Board shall be filled for the unexpired term by appointment by the State Board of Education on the nomination of the State Superintendent of Public Instruction." This latter provision was omitted from the General Statutes of 1906, and was thereby repealed. Chap. 5372, Acts 1905, page V, Gen. Stats. 1906.

The only constitutional duty of the county board of public instruction is to disburse the county school funds "solely for the support and maintenance of public free schools." The membership of the board is determined by statute. The duties conferred upon the board are governmental in their nature, therefore the members of the board are officers and under Section 27, Article III, Constitution, such members must be elected by the people or appointed by the Governor. The statutory authority and duties that may be conferred upon the board must not conflict with any provision of the Constitution, therefore a statute cannot authorize the county board of public instruction to appoint any officer without violating Section 27, Article III, Constitution, which requires all State or county officers not otherwise provided for *by the Constitution* to be elected by the people or appointed by the Governor. Section 1, Article XII, Constitution, requires the legislature to provide for a uniform system of public free schools, but this section cannot be a basis for the legislature to authorize the county board of public instruction to appoint county school officers whose duties are governmental and not merely clerical and ministerial in their nature, when the constitution provides that all county officers shall be elected by the people or appointed by the Governor.

WHITFIELD, J. (*after making the foregoing statement*):
Chapter 7809, Acts of 1919, as amended by Chapter 9135,
Acts of 1923, Sections 688 et seq., Comp. Gen. Laws, 1927,
purports to authorize the county board of public instruction
to appoint and to remove "attendance officers," and to fix
their compensation to be paid from the county school fund.
The enactment also proposes to confer upon such attend-
ance officers powers and duties that may be exercised or
performed only by officers. See Advisory Opinion to Gov-
ernor, 76 Fla. 500, 80 So. R. 17. These provisions of the
statute conflict with Section 27, Article III, of the Consti-
tution which commands that "the legislature shall provide
for the election by the people or appointment by the Gov-
ernor of all State and county officers not otherwise pro-
vided for by this Constitution, and fix by law their duties
and compensation." See County Commissioners v. Savage,
63 Fla. 337, 58 So. R. 835. A portion of the statute also
conflicts with the provision in Section 3, Article XII, Con-
stitution, that the State Board of Education "shall have
power to remove any school officer for cause, upon notice
to the incumbent."

The powers and duties prescribed by the statute for "at-
tendance officers" are essentially different from the duties
defined for "Rural School Inspectors" by Chapter 6539,
Acts of 1913. Though such rural school inspectors are
under the statute appointed by the Governor, they were held
to be not officers but employees, because of the nature of
their duties. State ex rel. Holloway v. Sheats, 78 Fla 583,
83 So. R. 508. As official duties involving the exercise of
governmental authority were prescribed by the statute for
"attendance officers" they would if legally appointed be
county officers. The salaries are directed to be paid from
the county school fund, and no officers except county school
officers can be paid from such fund. Section 15, Article

XII, Constitution. The statute does not create the officers
and fix the compensation for the officers, and then unlaw-
fully authorize the county board of public instruction to
appoint the officers. But the enactment attempts to au-
thorize the appointment of such attendance officers and the
fixing of their compensation, contrary to the terms of the
Constitution, therefore, no such *office* as "attendance
officer" is created, and the provisions of the statute for the
appointment of the officers and the fixing of their com-
pensation by the county board of public instruction are
violative of organic law and inoperative; and appointments
made under such statutory provisions are ineffectual to
give the appointees a status as officers so as to make them
removable as "subordinate school officers" by the State
Board of Education under Section 3, Article XII, of the
Constitution. Until legally elected or appointed there can
be no "attendance officers" to be removed as "subordinate
school officers." Subordinate school officers though ap-
pointed by the Governor or elected by the people as may
be provided by statute, in compliance with Section 27,
Article III, of the Constitution, may be removed by the
State Board of Education for cause and upon notice, as
provided by Section 3, Article XII, of the Constitution. In
so far as Chapters 7808 and 9135 attempt to authorize the
county board of public instruction to appoint and to fix
the compensation of attendance officers who are to perform
the prescribed official functions, the statutes are ineffectual
for that purpose; and such statutory provisions cannot be
regarded as legislative authority to employ attendance
officers for any definite period of time. The office of "at-
tendance officer" has not been legally created, and conse-
quently, one claiming to be an "attendance officer" is not
either a *de jure* or a *de facto* officer, with rights that are
incident thereto. 46 C. J. 1054; United States v. Royer,

·268 U. S. 394, 69 L. Ed. 1011, 45 Sup. Ct. Rep. 519; Norton v. Shelby County, 118 U. S. 425, 6 Sup. Ct. Rep. 1121, 30 L. Ed. 178; State ex rel. Holloway v. Sheats, 78 Fla. 583, 83 So. R. 508.

Where, without a statute expressly authorizing or regulating the matter, the county board of public instruction has implied authority to employ persons to perform *merely clerical or ministerial* duties that may properly be paid for from the county school fund, which the Constitution requires to be "disbursed * * * solely for the support and maintenance of public free schools,"· the authority to employ includes authority to lawfully terminate the employment, there being no statute or controlling regulation to the subject. And when the board has authority to terminate employment, it may be exercised by the board whether its personnel remains as when the employment was entered into or is changed by due course of law.

Section 1, Article XII, of the Constitution is that: "The legislature shall provide for a uniform system of public free schools and shall provide for the liberal maintenance of the same." This organic provision does not authorize the legislature to confer upon the county board of public instruction the power to appoint persons to perform county school functions that are essentially official and not merely clerical or ministerial in their nature, particularly when Section 27, of Article III, expressly commands the legislature to "provide for the election by the people or appointment by the Governor of all State and county officers not otherwise provided for by this Constitution," and when Section 7, of Article III, provides that "all county officers, except Assessors of Taxes, shall before entering upon the duties of their respective offices, be commissioned by the Governor." The authority given by the Constitution to the county board of public instruction to disburse the

county school fund "solely for the support and maintenance of public free schools," does not authorize the legislature to confer upon such board the power to appoint persons to exercise functions that may be performed only by officers, when under Section 27, of Article III, such officers must be elected by the people or appointed by the Governor. While as held in State ex rel. Bours v. L'Engle, 40 Fla. 392, 24 So. R. 539, Article XII of the Constitution provides for a system of county school taxation separate from general or other county taxation, such article does not require county school officers to be appointed or elected otherwise than is provided in other sections of the organic law.

The title to Chapter 7808, Acts of 1919, is misleading as to a part of the contents of the Act, in that there is nothing in the title to indicate that the body of the Act contains any provisions relating to the appointment and removal of attendance officers and the fixing of their compensation by the county board of public instruction, such provisions being contrary to organic law. This defect is not cured in the amending Act, Chapter 9135, Acts of 1923.

The title indicates an Act to enforce compulsory school attendance, and the natural assumption is that the means of enforcement that are provided in the Act are lawful, whereas the Act in fact provides that the enforcement officers shall be appointed and removed and their compensation fixed in a manner that is contrary to organic law.

While the Act of 1919, as amended in 1923, is incorporated in the Comp. Gen. Laws, 1927, such compilation has not been enacted as an entire revision of the general laws of the State and consequently any defects that may be in the titles of Chapters 7808 and 9135, Laws of Florida, have not been cured by re-enactment in a general revision of the laws, as in Christopher v. Mungen, 61 Fla. 513, text 534

55 So. R. 273; Carlton v. State, 63 Fla. 1, 58 So. R. 486; Henderson-Waits Lumber Co. v. Croft, 89 Fla. 119, 103 So. R. 414; Montsdoca v. Highlands Bank & Trust Co., 85 Fla. 158, text 162, 95 So. R. 666.

The demurrer to the alternative writ is sustained and the writ will be dismissed.

TERRELL, C. J., and ELLIS, STRUM, BROWN and BUFORD, J. J., concur.