STATE OF FLORIDA, *ex rel,* CARY D. LANDIS, Attorney-General, *Relator,* v. CHARLES F. BLAKE, *Defendant.*

148 So. 566.

Opinion filed May 10, 1933.

Cary D. Landis, Attorney General, Himes & Himes, and Wm. C. Pierce, for Relator;

Henry E. Williams, Frank T. Phillips, Ralph C. Binford and R. J. Duff, for Respondent.

TERRELL, J.—That part of Section 568 R. G. S. of 1920, Section 709 C. G. L. of 1927 applicable to this cause may be quoted as follows:

" * * * The powers of trustees shall not be those of control but of supervision only, and shall extend to all the public schools within the special tax district. (Any trustee failing to discharge the duties of the position shall be removed, after due notice to such trustee, by the county board of public instruction, and all vacancies occurring in the board of trustes from any cause, shall be filled for the unexpired term by the county board of public instruction, upon nomination by the patrons of the schools.")

Pursuant to authority vested in them by this Act the board of public instruction of Hillsborough County gave notice to and removed the defendant, Charles F. Blake, from the office of trustee of consolidated special tax school district No. 4 of that county. The defendant refused to recognize the authority of the board to remove him, defied their power to do so and continued to perform the duties of the office notwithstanding his removal.

Refusing to concede the power of the board of public in-

struction to remove him this proceeding in *quo warranto* on relation of the attorney general was brought to oust defendant from office. A demurrer to the information challenges the validity of Section 568 R. G. S. of 1920, *supra*, and the sufficiency of the procedure followed by the board of public instruction pursuant thereto.

In an opinion filed January 9, 1933, two justices not participating, a majority of this Court held that trustees of special tax school districts were either officers subject to removal by the Governor under Section 15 of Article 4 of the Constitution, or they were "subordinate school officers" subject to removal by the State Board of Education as contemplated by Section 3 of Article 12 of the Contitution. A re-hearing and a re-argument was granted and the Court is now urged to adjudicate the question of whether the Governor, the State Board of Education or the County Board of Public Instruction, under the statute quoted, is employed to remove trustees of special tax school districts.

On further consideration a majority of the Court have reached the conclusion that Section 15 of Article 4 of the Constitution providing for suspensions from office by the Governor has no application to trustees of special tax school districts, but that such removals may be accomplished by the State Board of Education in the manner provided by Section 3 of Article 12 of the Constitution.

Section 15 of Article 4 of the Constitution has reference to the suspension and removal of all appointive or elective officers, not subject to impeachment, to whom is delegated authority to exercise some portion of the sovereign power as makers, executors or administrators of the law. It involves the idea of tenure, duration and duties prescribed by government rather than contract. Trustees of special tax school districts are not in this classification as will later be

shown. State *ex rel.* Clyatt v. Hocker, 39 Fla. 477, 22 So. 721.

Section 3 of Article 12 of the Constitution provides for and incorporates the State Board of Education and authorizes it to remove "any subordinate school officer for cause upon notice to the incumbent." It carries no suggestion as to who are "subordinate school officers," nor provision for filling vacancies caused by such removals.

A subordinate officer is one who performs the duties imposed on him under the direction of a principal or superior officer or he may be an independent officer subject only to such directions as the statute lays on him. The compass of his duties is no determinant of classification. When the law imposes on him duties or requirements involving the exercise of independent will, choice or discretion beyond the control of a superior, he ceases to be a subordinate officer. People *ex rel.* Jacobus v. Van Wuck, 157 N. Y. 495; *In Re* Weaver, 131 N. Y. Supp. 144, 72 Misc. 438, 60 C. J. Words and Phrases (2nd Ed.) 736.

Under this specification trustees of special tax school districts may be classified as subordinate school officers. They were authorized by Section 10 of Article 12 of the Constitution and were created and given their status by Chapter 4678, Acts of 1899, Laws of Florida, Section 9 of which is now under attack as Section 568 R. G. S. of 1920, *supra.* Sections 11, 12, 13 and 14 of Chapter 4678, Acts of 1899, being now Sections 576, 570, 571, 574 and 575 R. G. S. of 1920, Sections 717, 711, 712, 715, and 716 C. G. L. of 1927, further define the duties of trustees of special tax school districts as they relate to those of county boards of public instruction. An inspection of these and other provisions discloses that trustees of special tax school districts have the unrestricted right to budget the district school tax imposed by the qualified electors of the district

for school purposes, that is to say, they apportion it equitably to buildings, repairs, libraries, salaries and other educational purposes and certify the same to the county board of public instruction, such certification to include the amount of millage voted, the amount of railroad and telegraph mileage, if any, but they cannot make a debt, employ a teacher, administer any funds or perform any independent administrative school function without the approval of the county board of public instruction.

In fine, the statutory powers of trustees of special tax school districts are "not those of control but of supervision only." Trustees of Special Tax School District v. Lewis, 63 Fla. 691, 57 So. 614. Under the direction of the county board of public instruction they are supervisors or overseers of the schools within the district, they are required to report to the county board of public instruction, they have strictly no independent discretionary or administrative duties to perform. Such duties as are imposed on them by statute are purely clerical under specific direction and otherwise their duties are subject to the direction or their recommendations to the approval of the county board of public instruction. The word "supervise" or "supervision" as used in both the statute and the Constitution in reference to their duties permits of no other interpretation. *In re* James, 97 Vt. 362, 123 Atl. 385, 60 C. J. 1164.

This view is further supported by what appears to have been the practical interpretation of the applicable law as not since the enactment of Chapter 4678, Acts of 1899, creating and defining the status of trustees of special tax school districts has one of them been commissioned or removed by the Governor nor has it been suggested that the executive department has otherwise interpreted the Act.

From the foregoing it follows that trustees of special tax school districts are "subordinate school officers" subject

to removal by the State Board of Education for cause as provided by Section 3 of Article XII of the Constitution. Insofar as Section 568 R. G. S. of 1920, *supra,* provides for the removal of such trustees by the county board of public instruction it is invalid and unenforceable, but since Section 3 of Article XII provides no means for filling vacancies by such removals that part of Section 568 R. G. S., *supra,* authorizing the board of public instruction to fill such vacancies may be upheld and is hereby adjudged to be enforceable.

Mr. Justice BROWN and the writer of this opinion are of the view that the Act brought in question be upheld *in toto.* This was evidently the view of the framers of the Constitution because some of them were members of the Legislature of 1889 which enacted Chapter 3872, Laws of Florida, and the Legislature of 1899 which enacted Chapter 4678, Laws of Florida. These two Acts were the composite effort on the part of the Legislature to comply with a mandate laid on them by Section 1 of Article XII of the Constitution to provide a uniform system of public free schools and to make liberal provisions for the maintenance of same. The former of these Acts created a board of public instruction in each county and prescribed its duties and powers. The latter made effective the provisions of Section 10 of Article XII of the Constitution by providing for the division of the counties into school districts, the election of trustees in each district and defining their duties and powers, Section 568, *supra,* is a part of the latter Act.

This Court has repeatedly held that it will not strike down an Act of the Legislature if there is any theory on which it can be upheld. It is true that trustees of special tax school districts are elected for definite terms and are spoken of as officers, but as shown herein they are invested with no independent sovereign duty to perform, which involves

choice of discretion but are mere agents of board of public instruction and this is the ultimate test of whether the incumbent is an officer or an agent for the performance of incidental governmental functions.

Under this state of facts it seems to me perfectly competent and proper to provide that special tax school district trustees be removed and their places filled by the county board of public instruction. This interpretation preserves the integrity of the Act assaulted and saves the harmony of the scheme provided by the Legislature for a uniform system of public free schools. I can see no reason for requiring that trustees of special tax school districts be removed by the State Board of Education when their duties make them nothing more than agents of the county board of public instruction.

Both the Act of 1889 and the Act of 1899 recognized the county board of public instruction as the head of the county school system and in compliance with the terms of Section 9 of Article XII of the Constitution require that the county school fund be disbursed by the county board of public instruction. These Acts further impose the responsibility of maintaining the county school system on the county board of public instruction and to better enable them to do this Article XII was amended in 1912 to authorize special tax school districts to issue bonds but the sole responsibility for doing this was imposed on the board of public instruction. Section 579, *et seq.*, R. G. S. of 1920, Section 720, *et seq.*, C. G. L. of 1927

A careful analysis of Article XII of the Constitution and the statutes herein treated, enacted to make it effective, seems to me to show conclusively that this was the interpretation placed on them by their authors and as already pointed out the authors of all were in some instances identical. No other provision of the Constitution attempts in

any respect to deal with the subject of public schools. Article XII was designed to be complete in itself for this purpose and all statutes designed to effect its purpose should, if possible, be construed to do so.

It follows that on re-hearing the demurrer to the petition is sustained and the cause is dismissed.

DAVIS, C. J. and BROWN and BUFORD, J. J., concur.

ELLIS, J., concurs specially.

WHITFIELD, J., dissents.

WHITFIELD, J. (dissenting).—Section 3, Article XII of the Constitution provides that "The State Board of Education * shall have power to remove any subordinate school officer for cause, upon notice to the incumbent." No authority is given the Board to fill vacancies caused by removals from office by the Board.

School district trustees are under the Constitution elected biennially in each school district for terms of two years, and besides statutory duties, have under Section 10, Article XII of the Constitution, supervision of all the schools within the district. The Constitution does not appear to contemplate that officers provided for by the Constitution, shall be regarded as "subordinate school officers" who may be removed from office by the State Board of Education under Section 3, Article XII of the Constitution. Prior decisions of this Court sustain this view.

In Advisory Opinion to the Governor, 97 Fla. 705, 122 So. 7, it is held:

"Power to suspend members of the Board of Public Instruction * is exclusively an executive function, under Const. Art. 4, Sec. 15, in that term 'subordinate school officer' as used in Art. XII, Sec. 3, has no reference to constitutional or statutory officers appointed by Governor or elected by people."

"The term 'subordinate school officer' as used in Sec. 3, of Art. XII of the Constitution has no reference to constitutional or statutory officers appointed by the Governor or elected by the people. It was doubtless intended to apply to so-called school officers designated by the County or State Board of Education, such as supervisors and attendance officers."

See also State *ex rel*. Board, 98 Fla. 66, 123 So. 540.

Section 15 of Article IV of the Constitution provides that "All officers that shall have been appointed or elected, and that are not liable to impeachment, may be suspended from office by the Governor" for stated causes. "And the Governor, by and with the consent of the Senate, may remove any officer not liable to impeachment" for like causes. "The Governor shall have power to fill by appointment any office, the incumbent of which has been suspended." Trustees of school districts are officers who are elected under the Constitution and they are not liable to impeachment. Their suspension or removal from office appears to be governed by Section 15 of Article IV, and not by Section 3 of Article XII of the Constitution. The power of appointment conferred upon the Governor by Section 15, Article IV, to fill vacancies caused by suspensions from office is of itself complete and effective for filling a vacancy in the office of school district trustee until the next biennial election of school district trustees in the particular districts, if the suspended officer is not reinstated.

Section 15, Article IV, not only provides that *all* officers who are elected or appointed and who are not liable to impeachment, may be suspended by the Governor; but the section expressly authorizes the Governor to fill by appointment any office the incumbent of which has been suspended.

The provisions of Section 6, Article XVIII of the Constitution that "The term of office of all appointees to fill va-

cancies in any of the elective offices under this Constitution, shall extend only to the election and qualification of a successor at the ensuing general election," has reference to the biennial election at which a successor to the officer may be chosen. Elections of school district trustees under Section 10, Article XII, are not special elections, but are biennial elections required by the Constitution, as are the biennial elections held under Section 9, Article XVIII, for the election of State and County officers, though the elections of school district trustees are not held on the same day that State and County officers are elected, and the qualifications of electors are different in the two classes of elections.

Municipal officers are not made a part of the State administrative system or of the school system. Their appointment or election or removal may be regulated by statute under Section 24 of Article III, and Section 8 of Article VIII of the Constitution.

ELLIS, J.—(Concurring in the conclusion that the demurrer to the petition should be sustained).—In 1929 in an Advisory Opinion to the Governor, the Justices of this Court, the writer dissenting, expressed the opinion that the term "subordinate school officer," as used in Article XII, Sec. 3 of the Constitution, has no reference to "constitutional or statutory officers appointed by the Governor or elected by the people." See Advisory Opinion to Governor, 97 Fla. 705, 122 South. Rep. 7.

In the case which gave rise to the above opinion the State Board of Education had made an order removing a member of the Board of Public Instruction of Duval County. The Governor desired to be advised whether under Article IV, Sec. 15 of the Constitution, he, as Governor, had the power to suspend the member of the Board, or whether he, as Governor, and the State Board of Education had con-

current jurisdiction in the matter. The conclusion reached was that the matter was exclusively an executive function.

I was of the opinion, as expressed by Mr. Justice TERRELL in that instant case, that "Article XII (Constitution) was designed to be complete in itself for this purpose (that of providing for a uniform system of public free schools) and all statutes designed to effect its purpose should, if possible, be construed to do so." That it was the purpose of the Constitution to make of the subject "uniform system of public free schools," under the title "Education," a special function of governmental activities the history of the subject from the formation of this government to the adoption of the Constitution of 1885, the legislative appropriations, the machinery employed to carry out the plan and the arrangement of constitutional provisions, reasonably prove. As Mr. Justice TERRELL aptly remarks "No other provision of the Constitution attempts in any respect to deal with the subject of public free schools." The foregoing being true, the conclusion that the removal of a subordinate school officer from office was exclusively an executive function was to my mind not justified because the foregoing statements being true no propositions can be put forward from which the conclusion reached in the Advisory Opinion may be drawn.

An Advisory Opinion, however, is not authority in the sense that it is a decision of the Court, because there is no "case" in which a decision may be made.

I think that the term "officer," as used in Section 3 of Article XII of the Constitution, bears the broader or commoner meaning of one who occupying some position or employment whether by appointment or election in some scheme or plan to carry on certain activities is required by law to discharge certain duties, rather than the narrow technical meaning of the term ascribed to it by the Court where the nature of the case requires the application of the narrow

meaning. I think the word was used in the general sense above mentioned. "In as much as I am the Apostle of the Gentiles, I magnify mine *office*." (Italics mine) Romans XI:13.

In that sense the State Board of Education is vested with the power to remove a school trustee in a county under the provisions of the statutes. That such an officer has duties to perform, as required by the statute, that those duties require the exercise of discretion and even partake of the nature of sovereign power are circumstances which may magnify his office, but in no sense afford a sufficient reason for placing the matter of his removal in the power of the Chief Executive and thus to that extent open the "public free school system" to an influence from which the framers of the Constitution desired and intended to protect it.

Although the point is not presented in this case and therefore what may be said upon it is mere dictum, there seems to be no valid reason why the Legislature may not by appropriate legislation provide for the filling of any vacancy that may occur in the office of trustee by the "County Board of Public Instruction."

The county schools do not in and of themselves constitute a county unit in the public free school system separate and apart, independent. absolute, exempt from control of the superior officers of the system; they are but an integral part of an harmonious whole, designed to constitute a system. As was said, in the opinion referred to, by Mr. Justice TERRELL, "Article XII was designed to be complete in itself for this purpose."

I agree therefore that the demurrer should be sustained.