153 So.2d 368

**Vernita JEFFERSON**

v.

**Sam JEFFERSON et al.**

No. 46515.

April 29, 1963.

Rehearing Denied June 4, 1963.

Ted R. Broyles, Leesville, for applicant.

Jess L. Funderburk, Jr., Leesville, Alvin R. Christovich, Sr., New Orleans, for respondents.

McCALEB, Justice.

The relators applied to this Court for a writ of alternative mandamus to compel the

Court of Appeal, Third Circuit, to consider their application for a rehearing. The adverse judgment was rendered by the Court of Appeal on September 24, 1962 and notice thereof was deposited in the United States mail on the same day. The notice was delivered to counsel for relators on the following day, September 25, 1962, and an application for a rehearing was filed on October 9, 1962, which was within 14 days after notice of the judgment was received by counsel. The Court refused to consider the application for the reason that the uniform rules of the courts of appeal require that an application for rehearing be filed on or before the 14th calendar day after delivery of notice of judgment " * * * by deposit in the U. S. mail * * * " which in this case was October 8, 1962, whereas the application was not filed until October 9, 1962. See La.App., 145 So.2d 356.

In view of our decision in Wanless v. Louisiana Real Estate Board, 243 La. 801, 147 So.2d 395, we ordered the respondent court to pass on relators' application for rehearing or to show cause why the relief prayed for should not be granted. The judges of the Court of Appeal did not comply with the order; instead, they resisted relators' demand and have prayed that this Court declare that Rule XI, Section 1, Uniform Rules of the Courts of Appeal constitutes, as adopted, a valid exercise in all respects of the rule-making power delegated to those courts by Section 24 of Article 7

of the Louisiana Constitution, as amended by Act 561 of 1958.[1]

In Wanless v. Real Estate Board, supra, we had for decision the question of whether an application for rehearing was timely filed in the Court of Appeal, First Circuit, on March 30, 1962 in view of the fact that the notice of the judgment, which was dated March 16, 1962, was mailed on March 15, 1962 and received on the following day, March 16, 1962. The fourteenth day after March 15, 1962 was March 29, 1962 and, hence, the application would not have been timely filed on March 30, 1962, according to the Uniform Rules of the Courts of Appeal which provide that notice of judgments will be delivered " * * * personally, or by certified or registered mail * * *" and that the application for rehearing "must be filed * * * on or before the fourteenth calendar day after such delivery * * * by deposit in the U. S. mail, * * *". The Court of Appeal nevertheless entertained the application for rehearing over the objection of the prevailing litigant and, when the case was brought here on a writ of review, counsel for this litigant moved to dismiss the proceeding on the ground that the application for rehearing had not been timely filed in the Court of Appeal. This motion was overruled by us on two grounds—(1) that, since it appeared that the Clerk of the Court of Appeal admitted that he made a mistake in mailing notice to counsel on March 15, 1962 when the decision, although handed down on March 14, 1962, and notice thereof was scheduled for mailing on March 16, 1962 (which was the day stamped thereon), the application was timely filed on March 30, 1962—and (2) that, in any event, the application was filed timely on that date because the fourteen-day delay allowed by law for filing applications for rehearing in the courts of appeal did not commence to run until March 16, 1962, the day upon which counsel of record received notice of the judgment of the Court of Appeal.

 In reaching this latter conclusion, we found that the rule-making power vested in the Courts of Appeal by Section 24 of Article 7 of the Constitution did not authorize them to ascribe to the constitutional provision—that "Notice of all judgments shall be given to counsel of record; and the court shall provide by rule for the giving of such notices"—a different interpretation than had been previously given by this Court to the language used therein in our decisions in Lacaze v. Hardee, 199 La. 566, 6 So.2d 663; Mid-State Tile Company v. Chaudoir, 228 La. 634, 83 So.2d 654, 656

---

1. It provides, so far as pertinent here:
 " * * * Appeals shall be returnable to the domiciles of the respective courts of appeal in the manner and within the time fixed by law. Notice of all judgments shall be *given* to counsel of record; and the court shall provide by rule for the *giving* of such notices." (Italics ours).

and Reeves v. Department of Highways, 228 La. 653, 83 So.2d 889. Noting that the cited cases had construed the constitutional provision, "Notice of all judgments shall be *given* to counsel of record", as requiring that the notice be delivered and received before the delay for applying for a rehearing commenced to run, we declared Rule XI, Section 1 of the Uniform Rules of the courts of appeal invalid, insofar as it conflicted with the Constitution as thus interpreted, and, further, that the rule was contrary to Article 2166 of the Code of Civil Procedure[2] and R.S. 13:4446, as last amended by Act 38 of 1960.[3]

Counsel for the respondent judges proclaims that this ruling in the Wanless case was obiter dicta and, being unnecessary to the result there reached, is not controlling. Moreover, counsel asserts that, in any case, our holding was incorrect inasmuch as we failed to consider that the authorities cited in support of our view were decided before the constitutional change effected by the adoption of Act 561 of 1958, which deleted from Section 24 of Article VII the last sentence thereof providing that "No delay shall run until such notice shall have been given". It is argued that the prior jurisprudence, which holds that the mere mailing of notice does not constitute the *giving* of notice as required by Section 24 of Article VII, was predicated entirely on the last sentence of the constitutional provision and that the specific purpose of the deletion of this sentence by constitutional amendment was to enable the courts of appeal to provide, by uniform rules, for the administratively-fixed date of mailing, rather than the variable date of receipt, to govern the time when the delay for filing applications for rehearing would commence to run.

We find no merit in counsel's first contention that our holding in the Wanless case, anent the unconstitutionality of the rule of the courts of appeal to the extent therein specified, is obiter dicta. On the contrary, a mere reading of the opinion shows that the conclusion respecting the invalidity of the court rule was deliberate and on an equal footing with the other reason given in disposing of the issue in the case.

Since we have declared the uniform court rule partially unconstitutional, it appears to be somewhat dubious that we have the right to reconsider this ruling in the instant case as counsel for the respondent judges urges us to do. For a rule of court, like a statute, has the force and effect of

2. This Article provides, in part: "In the courts of appeal the delay for applying for a rehearing commences to run the day after notice of the judgment has been *given* by the court to counsel of record in the case." (Italics ours).

3. It recites, in part: "B. Applications for rehearing in the courts of appeal must be filed on or before the fourteenth calendar day *after notice of judgment has been given, as required by Article VII, Section 24, of the Constitution.*" (Italics ours).

law and, when a law is stricken as void, it no longer has existence as law (see 16 C.J.S. Constitutional Law § 101; State v. Cormier, 171 La. 1035, 132 So. 779; 11 Am.Jur. "Constitutional Law", Sec. 148); the law cannot be resurrected thereafter by a judicial decree changing the final judgment of unconstitutionality to constitutionality as this would constitute a reenactment of the law by the Court—an assumption of legislative power not delegated to it by the Constitution. 11 Am.Jur. Sec. 198; 21 C.J.S. Courts § 215.

Nevertheless, in deference to the sincere belief of the judges of the courts of appeal and their counsel that this Court grievously erred in its holding in the Wanless case in view of the 1958 constitutional amendment to Section 24 of Article VII of the Constitution, we believe we should consider and discuss what effect, if any, has the deletion of the last sentence from the original constitutional provision had upon the import of the language remaining therein.

As stated above, the judges and their counsel say that the last sentence of the constitutional provision reading "No delay shall run until such notice shall have been given" was deleted from the applicable part of Section 24 of Article VII for the specific purpose of overruling the jurisprudence of this Court which had construed the past participle "given" and the verbal noun "giving" as being synonymous with supplying,

according, presenting, bestowing or conferring (see Webster's New International Dictionary 2d Ed.) and connoted that the notice must be *delivered* in order to be *"given"*.

If is be conceded, as counsel contends, that the 1958 constitutional amendment to Section 24 of Article VII was designed to permit the courts of appeal to provide by uniform rule that notices of their judgments are *given* when such notices are deposited in the mail, rather than the date upon which the notices are delivered to counsel of record, this still does not answer the question —which is, whether the deletion of the last sentence of the constitutional provision has accomplished this purpose. Applicable here are only two sentences of the provision. The first declares "Notice of all judgments shall be *given* to counsel of record; and the court shall provide by rule for the *giving* of such notices". The second sentence, which has now been deleted, simply states "No delays shall run until such notice shall have been *given."* We find it difficult to perceive that the elimination of this sentence has in anywise changed the meaning of the words "given" or "giving", as used in the first sentence. The only logical significance which can be attributed to the elimination of the last sentence from the provision is that it may have been the intent of the amendment to free the Legislature from the constitutional proscription against the enactment of a statute prescribing that

the time for applying for a rehearing in the courts of appeal will begin to run from the date of rendition of judgment, as formerly provided by Act 16 of 1910, wihch was incorporated in the Revised Statutes of 1950 as R.S. 13:4446 and later amended by Act 51 of 1954.

The validity of this statute was tested in 1955 in Mid-State Tile Company v. Chaudoir, 228 La. 634, 83 So.2d 654 and Reeves v. Department of Highways, 228 La. 653, 83 So.2d 889. Since the last sentence of the constitutional provision that "No delay shall run until such notice shall have been given" was still part of the Constitution at that time, it was held in both cases that R.S. 13:4446, as amended by Act 51 of 1954, was ineffective as to judgments of the Courts of Appeal of the First and Second Circuits, which were the only courts of appeal affected by Section 24 of Article VII until the constitutional amendment in 1958. While our conclusion in those matters was predicated in part on the constitutional prohibition against the commencement of delays until notice had been given, we went on to declare that the notices were timely in each case inasmuch as the applications for rehearing had been filed within 14 days from the date the notices of judgment were delivered and received by counsel of record, notwithstanding that they were not filed within 14 days from the date the notices were sent by registered mail.

The views expressed in the Chaudoir and Reeves cases followed the rationale of the decision in Lacaze v. Hardee, 199 La. 566, 6 So.2d 663 (1942). In that matter it appeared that the Court of Appeal, Second Circuit, had adopted a rule, substantially the same as the Uniform Rule involved herein, which declared that the delay for filing applications for rehearing "shall begin to run from the date of such notice", i. e., the date the notice of judgment was placed in the mail.[4] This Court expressly held, however, that this rule was contrary to the plain provisions of the constitution because a notice of judgment is not given until it is received. Albeit in agreement with the majority view, our then Chief Justice Charles A. O'Neill wrote an able concurring opinion in which he spelled out the meaning to be attributed to the word "given" and even suggested the language that would have been used had the framers of the Constitution intended that notice was to be effective from the time of deposit in the mail. He observed, in part:

"* * * I concur in the ruling that the notice was not *given* until it was *received*. Section 24 of Article 7 of the Constitution leaves no doubt about that, because it declares that the notice shall be *given* to counsel of record, and that the court shall provide by rule for the

---

4. The rule had been enforced in 1940 by the Second Circuit Court of Appeal in McCollister v. Police Jury of Sabine Parish, 197 So. 661.

*giving* of such notices and that no delay shall run until such notice shall have been *given*. If the writers of this section of the Constitution had intended that the mailing or sending of the notice would mark the day from which the delay for applying for a rehearing should be computed, they would have used the word 'mailed', or the word 'sent', instead of the word 'given'."

█ If the writers of the constitutional amendment of 1958 intended to change the time from which the delays for applying for a rehearing shall begin to run under our statutory law, C.C.P. Art. 2166 and R.S. 13:4446B, their design is not evidenced by any language from which such a conclusion can be drawn. The elimination of the last sentence of the original constitutional provision cannot be regarded to have altered in any respect the import of the language of the first sentence, as interpreted by this Court.

Nor do we find any substance in the contention of counsel for the respondent judges that the constitutional mandate that the courts of appeal "shall provide by rule for the giving of such notices" vests in those courts the power of changing by rule the meaning of the giving of notice as used in the Constitution. Indeed, this is the same language which the provision contained prior to the 1958 amendment and it would be illogical to conclude that the deletion of the

last sentence of the provision had in some way increased the power of the courts of appeal to adopt a rule which this Court had disapproved in Lacaze v. Hardee as being inimical to the meaning of the word "given" as used in the Constitution. Rather, we think, the obligation imposed on those courts to provide by rule for the giving of notices of their judgments empowers them only to select the *method* or the *means* by which counsel of record are to be notified of the rendition of the judgment and that this authority does not extend to the adoption of rules which change the meaning of the language employed in the constitutional provision.

For the reasons assigned, the alternative writ of mandamus heretofore issued is made peremptory and the Honorable Judges of the Court of Appeal, Third Circuit, are ordered and directed to consider and determine relators' application for a rehearing in this case.

HAMITER, Justice (dissenting).

While I subscribed to the opinion in the Wanless case, which declared unconstitutional Section I of Rule XI of the Uniform Rules of the Courts of Appeal (opinion reported 243 La. 801, 147 So.2d 395), I then entertained some doubt as to its correctness and planned to further study the case on the submission of an application for a rehearing. But no such application was filed, the

attorney representing the unsuccessful litigant having died near the time of the decision's rendition.

The same legal question is now presented by this proceeding, and after a thorough study of it I am convinced that the above mentioned Uniform Court Rule is not unconstitutional.

Prior to 1958 this court was called upon, in three separate cases, to interpret the following provisions (relating to the Courts of Appeal) contained in Section 24 of Article VII of the Louisiana Constitution of 1921: " * * * Notice of all judgments shall be given to counsel of record; and the court shall provide by rule for the giving of such notices. No delay shall run until such notice shall have been given." And in each case the interpretation was that no delay should commence until the required notice of judgment was actually delivered to counsel of record. See Lacaze v. Hardee et al. (1942), 199 La. 566, 6 So.2d 663; Mid-State Tile Company v. Chaudoir (1955), 228 La. 634, 83 So.2d 654; and Reeves v. Department of Highways, State of Louisiana (1955), 228 La. 653, 83 So.2d 889.

But in the year of 1958 (following such decisions) the Courts of Appeal throughout the state were reorganized by means of an adopted and ratified joint resolution (Act No. 561), and therein the above quoted provisions of Section 24 of Article VII of the Louisiana Constitution were amended and re-enacted so as to delete the sentence "No delay shall run until such notice shall have been given." And, as a result of such deletion, the Courts of Appeal were directed: " * * * Notice of all judgments shall be given to counsel of record; and the court shall provide by rule for giving of such notices."

Obviously, the purpose of that re-enactment and deletion was to legislatively and constitutionally overrule the decisions in the three above cited cases, for as stated in Hibernia National Bank in New Orleans v. Louisiana Tax Commission et al., 195 La. 43, 196 So. 15, "The jurisprudence is well-settled that, when a statute (particularly one which has been interpreted by the courts) is amended, and the wording of the act is altered, the Legislature intended to change the former law on the subject. * * * " Also, by such change the Courts of Appeal were required and privileged (which privilege they have since exercised) to decide and provide by rule the method to be employed in notifying counsel of record of the rendition of judgments.

The "giving" of notice does not necessarily means an actual "deliverance" of it. Certainly, no one could successfully contend that the mailing of a notice when legally authorized is an insufficient "giving" of it. See Code of Civil Procedure, Article 1914. In fact, it is well recognized that in many

instances the law sanctions the "giving" of notice by mere newspaper advertisements.

In the majority opinion the suggestion is offered that since the Uniform Court Rule under consideration has been held unconstitutional in the Wanless case it (like a statute) could not now be "resurrected" by the overruling of that final holding. But my views on this subject are somewhat different, they being in accord with certain pronouncements contained in Jawish v. Morlet, Court of Appeal, District of Columbia (1952), 86 A.2d 96, as follows: "There are comparatively few cases dealing squarely with the question before us, but they are unanimous in holding that a law once declared unconstitutional and later held to be constitutional does not require re-enactment by the legislature in order to restore its operative force. They proceed on the principle that a statute declared unconstitutional is void in the sense that it is inoperative or unenforceable, but not void in the sense that it is repealed or abolished; that so long as the decision stands the statute is dormant but not dead; and that if the decision is reversed the statute is valid from its first effective date. See State ex rel. Badgett v. Lee, 156 Fla. 291, 22 So.2d 804; Pierce v. Pierce, 46 Ind. 86; McCollum v. McConaughy, 141 Iowa 172, 119 N.W. 539; Allison v. Corker, 67 N.J.L. 596, 52 A. 362, 60 L.R.A. 564; Shephard v. City of Wheeling, 30 W.Va. 479, 4 S.E. 635."

And this observation relating to the subject, found in 16 C.J.S., verbo Constitutional Law § 101, page 469 (cited in the majority opinion) also appears to be pertinent: "a. In General. The general rule is that a statute declared unconstitutional is null and void as of the date of its enactment; but the rule, in this form, has been held too broad, and to be subject to many exceptions and qualifications. Generally, the reversal or overruling of an adjudication of unconstitutionality validates the statute as of the date of enactment."

I respectfully dissent.