STATE OF FLORIDA, on the Relation of Russell Badgett, et al., a Co-partnership, trading as Badgett Construction Company, v. J. M. LEE, as Comptroller of the State of Florida.

22 So. (2nd) 804                                June Term, 1945
July 20, 1945                                        En Banc

*Keen, Allen & O'Kelley,* for relator.

*J. Tom Watson,* Attorney General and *George M. Powell,* Assistant Atorney General, for respondent.

THOMAS, J.:

This and twenty-three companion cases have been submitted upon motion to quash the alternative writs issued by authority of Division "A". Although the controversies are now in a preliminary stage, it seems advisable to record our

views in this one, to the end that final disposition of all may be expedited and simplified.

By the writ the Comptroller was commanded to refund to relators a certain amount alleged to be payable under Chapter 22008, Laws of Florida, Acts of 1943. (Section 215.26, Florida Statutes, 1941, Sup., and F.S.A.)

The attack, by way of the motion we now entertain, was based on the ground, among others, that there were no sufficient allegations that relators had complied with Section 8 of Article IX of the Constitution and that Chapter 17178, Laws of Florida, Acts of 1935, having upon the effective date of the Florida Statutes, 1941, been reenacted as Section 205.36 of that compilation, relators became indebted for taxes which had to be discharged as a prerequisite to a judgment in their favor.

In the hope of minimizing, if not obviating, confusion we pause now to analyze the two acts and the portion of the constitution to which we have referred. By Section 17178, *supra,* anyone bidding, for fixed price, "to construct within the State of Florida any public building, highway, street, sidewalk, bridge, culvert, sewer or water system, drainage or dredging system, electric or steam railway, reservoir or dam, hydraulic or power plant; transmission line, tower, dock, wharf, excavation, grading or other improvement or structure, or any part thereof," the cost of which would exceed the sum of $50,000, was required to "obtain from the Comptroller an annual State-wide license" and pay therefor "a tax of one thousand dollars ($1,000) prior to offering or submitting any bid on any of the above enumerated projects." This is the substance of Chapter 17178 and Section 205.36, *supra,* which are identical except that in the former the designated amounts appear parenthetically in numerals, and reference is made in the former to "every person, firm or corporation," in the latter to "every person."

Many years later Chapter 22008, *supra,* was enacted authorizing the Comptroller to refund, upon proper and timely application, money reaching the State treasury as an over-payment of license or tax, as a payment where none such was due, or as a payment made through error. It was under this

statute that demand was made by relators, and upon refusal by the respondent, the Comptroller, the alternative writ was sought and granted.

Section 8 of Article IX, with which respondent claims relators did not comply, contains the provision that no one shall be relieved of illegal tax unless he pays such portion of his taxes as are legal; so, argues the respondent, relators should not be awarded a peremptory writ until "taxes which have accrued under Section 205.36 [Chapter 17178] for the years 1942, 1943 and 1944" have been paid, which has reference to the tax for each of these years claimed by the respondent to be payable for the annual state-wide license to bid upon the construction of the public works detailed in the quotation from the Act.

The relators paid to the Comptroller in 1936 the sum of $1,000 for "Construction License No. 20 for the year 1936-37." Then, in Lee, Comptroller, v. Bigby, 136 Fla. 305, 186 So. 505, the statute, 17178, was declared by this court unconstitutional in an opinion which we shall presently discuss.

Before proceeding further we interject a chronology of circumstances relevant to a decision of the issues. The act requiring the license was passed in 1935; the money involved was paid in 1936; the statute was held violative of the constitution in 1939; the Florida Statutes, 1941, in which was incorporated Chapter 17178 as Section 205.36, was enacted as Chapter 20719 in 1941 and became effective in 1942; Chapter 22008 became a law in 1943; and application for refund was presented in 1944.

The respondent's contention that the relief against the illegal tax, in this case attempted to be accomplished by peremptory writ commanding a refund, cannot be obtained without their paying, or alleging the payment of, or offering to pay subsequent taxes for the licenses, brings into focus the efficacy of Section 205.36 as it now appears in the compilation. There was a presumption that this act, 17178, was constitutional and fully effective from the day it became a law, but this presumption ended when the court unanimously held that it contravened Section 16 of Article III of the Constitution. Then and there it became inoperative, to remain so as long as

the decision holding it invalid was maintained. Christopher, v. Mungen, 61 Fla. 513, 55 So. 273. In that case Mr. Chief Justice WHITFIELD added that "if the decision is subsequently re-, versed, the statute will be held to be valid from the date it first became effective, even though rights acquired under particular adjudications where the statute was held to be invalid will be affected by the subsequent decision that the statute is constitutional." We are not advised of any effort on the part of the legislature to revive the provisions of the Act after this court declared it unconstitutional or of· any recession from that opinion. We quote from Christopher v. Mungen because we think it commits us to the rule that, though a statute declared unconstitutional becomes inoperative, it is not dead, only dormant. The question, then, is simply whether Chapter 17178, pronounced inoperative in the cited case, could be revivified by its incorporation in Florida Statutes, 1941.

The history of the compilation becomes relevant. The legislature, in Chapter 19140, Acts of 1939, directed the Attorney General to consolidate all general laws of Florida "in force, of a permanent nature" for submission at the following session. This he did, and by Chapter 20719, Laws of Florida, Acts of 1941, his compilation was adopted. Obviously Chapter 17178 was not in force at the time it was included in the code, but this seems unimportant when we examine the phraseology of the statute, Chapter 20719, Laws of Florida, Acts of 1941, adopting the Attorney General's compilation. It was titled "AN ACT TO Approve, Adopt and Enact the Florida Statutes 1941; Prepared by the Attorney General Under Direction, and by Authority of the Legislature of Florida, with Certain Amendments Thereto" etc. Section 1 probides that "The accompanying compilation and revision of the public statutes of the State of Florida of a general and permanent nature, prepared by the Attorney General . . . be and the same is hereby adopted and enacted as statute law . . ." It seems to us that any irregularity on the part of the Attorney General in including the statute, at the time not "in force," was cured when the legislature adopted his revision and that his action in this respect was thereby ratified. There is no need further to remark upon this point.

In Christopher, v. Mungen, *supra,* McConville, v. Fort Pierce Bank & Trust Company, 101 Fla. 727, 135 So. 392, and other cases we have decided that defective titles of acts of the Legislature are remedied by general revision of the laws, but hitherto we have not encountered the question whether such imperfections are overcome if, meanwhile, the acts have been judicially declared unconstitutional on that account. It is certain that all laws may be grouped under one title and passed by the Legislature without violation of Section 16 of Article III, and if this may be lawfully done, even though some particular Act may have been unconstitutional because of its defective title and the imperfection may by that means be cured it seems to us that the rule should not be varied simply because there had been a decision of the court on the subject. The evil inhibited by Section 16 of Article III would be present in either event, though in one case it had not been judicially recognized. The title of the act adopting the revision, which we have quoted, gave equal notice of the inclusion of Acts with sufficient titles, Acts with insufficient titles, and Acts with insufficient titles which had been passed upon by this court. No person could have been misled into the belief that an act declared unconstitutional because of an inadequate title would not be included in view of the ruling in Christopher v. Mungen that it might be restored by the change in the views of a majority of the Supreme Court. We adopt the rule that an Act, the title of which is insufficient, may become valid by incorporation in a general revision of the laws whether the insufficiency has been adjudicated or not.

What we have said relates only to the invalidity of Acts because of deficient titles. Incorporation in a general revision of the statutes would not cure a particular act of any unconstitutionality of content. Counsel have expressed widely divergent opinions of the effect of Lee, Comptroller, v. Bigby, *supra,* so far as it dealt with the Constitutionality of the body of Chapter 17178. It is true that most of that opinion, in which all members of this court concurred, was devoted to the matter of the title, but we did say: *"To require the payment of a fee for the mere purpose of bidding would be arbitrary and unreasonable* and to exact the fee of only those who were the

successful bidders would write something in the Act that the Legislature expressed no purpose of doing. Not only that but it would in effect defeat other requirements of the law providing that public contracts be let to the lowest . . . bidder as the *exaction imposes an unreasonable burden."* (Italics supplied.) An examination of the original file of the case discloses that three questions were presented challenging the Constitutionality of the Act—on the grounds that (1) the title was faulty, (2) the tax imposed and the classification made were unreasonable and arbitrary, and (3) the effect of the act was to prevent legitimate, open, competitive bidding. Though there was no elaborate comment on the last two questions, the quoted paragraph answered them.

The view we now entertain, that despite the brief treatment of the point the Act was declared unconstitutional because of substance as well as title, is strengthened by reference to an opinion by the same author in State ex rel. Hardaway Contracting Co., Inc., v. Lee, State Comptroller, 21 So. (2nd) 211, where the validity of a claim like the present one and the propriety of the procedure adopted here were approved. In that litigation relator was awarded a peremptory writ under Chapter 22008, commanding refund of a tax paid for the license required by Chapter 17178, although the latter had then been incorporated in Florida Statutes, 1941, as Section 205.36. There appears no dissimilarity in essential facts in that case and this. The issues are practically the same except the one presented here anent the Constitutional prerequisite with reference to payment of taxes not challenged, which we have said introduced the question of the Constitutionality of 17178 as now embedded in Florida Statutes, 1941. Even so, the opinion in Lee v. Bigby and Hardaway Contracting Co., v. Lee read together justify the conclusion that the invalidity of the act was still present after its reenactment of Florida Statutes of 1941, else the court would not have decided that relators were entitled to a peremptory writ under Chapter 22008, creating the right to a refund after the repassage in Chapter 20719.

The motion to quash the alternative writ is denied, and respondent is allowed until 30 July 1945 to answer if he considers a return necessary or advisable.

CHAPMAN, C. J., TERRELL, BROWN, BUFORD, ADAMS and SEBRING, JJ., concur.