238 So.2d 650 (1970)
J.W. OWEN et al., Appellants,
v.
Richard L. CHENEY et al., As City Council of the City of Tampa, and Central Oil Company, Inc., et al., Appellees.
Nos. 69-515, 69-454.
District Court of Appeal of Florida, Second District.
July 22, 1970.
Rehearing Denied September 15, 1970.
*652 Paul B. Johnson, of Gregory, Cours, Paniello & Johnson, John A. Lawson, Jr., of Holland & Knight, Tampa, and Phillip Goldman, of Scott, McCarthy, Steel, Hector & Davis, Miami, for appellants.
W. Reece Smith, City Atty., and William Earle Tucker, of Gibbons, Tucker, McEwen, Smith, Cofer & Taub, Tampa, for appellees.
McNULTY, Judge.
Section 167.431, F.S.A., authorizes the imposition of a "utility tax" by municipalities. We are called upon to construe this section in the light of two ordinances of the City of Tampa. In pertinent part, § 167.431, supra, provides as follows:
"(1) The several cities and towns in this state are hereby given the right, power, and authority, by nonemergency ordinance, to impose, levy and collect on each and every purchase of electricity, metered or bottled gas (natural liquefied petroleum gas or manufactured), water service, telephone service and telegraph service in their corporate limits, a tax * * * in an amount not to exceed ten per cent of the payments received by the seller of such utility service from the purchaser for the purchase of such utility service; * * * In the event any such ordinance imposes such a tax on the purchase of one of the utility services described herein and a competitive utility service or services are purchased in the city or town, then such ordinance shall impose a tax in like amount on the purchase of the competitive utility service or services whether privately or publicly owned or distributed; * * *" [Emphasis supplied]
Pursuant to this statute the City of Tampa enacted Ordinance No. 1017-A which imposed a tax on the purchase of electricity, natural gas and bottled and LP gas. Thereafter, the City sought to impose a like tax on the purchase of fuel oil by enacting Ordinance No. 4525-A, but this latter ordinance was repealed prior to its effective date.
Appellants are distributors and/or purchasers of the first-mentioned utility services originally, and presently, taxed under the aforesaid Ordinance No. 1017-A. They argue, in essence, that the gravamen of § 167.431, supra, is to authorize municipal taxation of all "competitive" utility services, of whatever kind, and that by the clear import of the statute such tax cannot be limited only to the purchase of those utility services expressly mentioned therein. It is alleged that the distribution of fuel oil is "competitive" to one or more of the utility services now taxed and, therefore, either the original taxing ordinance is unauthorized because it fails to tax the purchase of fuel oil, or the subsequent ordinance repealing such a tax is unauthorized for the same reason. Appellants thus seek declaratory judgments concerning their rights in the premises against the city and against all Tampa fuel oil dealers as a class.
Appellee-fuel oil dealers, on the other hand, essentially contend that a delegation of taxing power to municipalities must be strictly construed against the power. Accordingly, they say, only those utility services "specifically named" in the statute are amenable to such taxation, and regardless of whether the distribution of fuel oil in the City of Tampa is in fact "competitive" with the utilities specified, the express power to tax purchases thereof is nonexistent.
*653 The trial court agreed with the fuel oil dealers and held:
"* * * Section 167.431 does not require the city to tax purchases of fuel oil because it has taxed one or more of the services specifically mentioned in the act. This is so even though fuel oil is competitive with other services pursuant to Section 167.431. Accordingly, there is no need to go further".
Thereupon, the court granted motions to dismiss appellants' complaints, with prejudice, in which they prayed for injunctive relief, or, alternatively, mandamus against the City Council. We reverse.
At the outset, we agree with the trial court that "[t]he essential point to be decided is whether the Legislature intended, in enacting Section 167.431, to provide that if a municipality elects to tax purchases of one of the specifically named services, it must also tax purchases of any other competitive service even though it is not specifically named in the statute". This precise question has never been decided by any case cited or found, although true it is, that in a similar case involving the section of the statutes with which we are here concerned, our Supreme Court, in City of Orlando v. Johnson,[1] voided a city ordinance taxing the purchase of fuel oil where such ordinance was passed purportedly on the authority of the "competitive utility" proviso of the statute which we italicized above. The direct holding of that case, however, is that since the purchase of fuel oil was not expressly or impliedly mentioned in the title to the act when passed any interpretation thereof allowing the taxing of fuel oil services would render the act unconstitutional in view of the provisions of § 16, Art. III of the Florida Constitution, F.S.A.[2] As was its duty, then, the court preserved the validity of the act by holding, on constitutional grounds, that the city was without valid authority to pass the ordinance relating to a tax on the purchase of fuel oil. It can be said, therefore, that the court did not void the ordinance as being contrary to legislative intent. In other words, the real holding in that case is that, regardless of the legislative intent, to the extent that the body of the statute in question gave municipalities authority to tax the purchase of any commodity or service not specifically mentioned in the title thereof, such statute was, at the time of its original passage, unconstitutional.
Subsequent to the decision in that case, however, the statute in question, codified as § 167.431, supra, has been repeatedly re-enacted materially unchanged in the bienniel revisions of the Florida Statutes.[3] These circumstances bring the statute within the well-settled rule in Florida that all infirmities or defects in the title of a re-enacted statute are cured by the re-enactment;[4] and this is so whether the statute had theretofore been judicially declared inoperative because of such title defect or not.[5] We are of the view, therefore, that the discipline of Johnson, supra, does not preclude us from freely and fully construing the statute before us in terms of legislative intent and according to the rules governing statutory construction.
Accordingly, we initially allude to the common sense rule that a statute couched in clear and unambiguous language needs no "aids" for its clarification, construction or interpretation.[6] The statute *654 before us, we think, is simply this clear and unambiguous. It patently provides that should the utility tax authorized thereby be imposed on "one of the utility services described [t]herein and a competitive utility service or services are purchased * * * then such ordinance shall impose a tax in like amount on the purchase of the competitive utility service or services * * *." [Emphasis supplied] Conspicuously, such words as, "described herein", "specifically named herein", or words of similar import, were not used to modify or limit the term "competitive utility service". Yet, the necessary effect of the lower court's interpretation is to impliedly insert such words of limitation into the statute. Concededly, implied insertions may judicially and judiciously be used to resolve ambiguities in a statute; but if, as appellees suggest, § 167.431, supra, is now ambiguous as worded, how would the aforesaid implied insertions limiting "competitive utilities" make it any less ambiguous? They would merely make the statute applicable only to enumerated "competitive utilities" services whereas, now, it embraces all "competitive utility" services. In each case, however, the statute is equally unambiguous as to the utilities affected.
Certainly, moreover, no such words of limitation are necessary either to make sense out of the statute as written or to sustain its validity. In fact, by impliedly inserting them, a different and distinct meaning is given to it. To warrant such result by the implied addition of words of modification or limitation the presumption of an intention to make the statute operate as it would when so altered must be so strong that the contrary thereof cannot reasonably be supposed,[7] or it must clearly appear that such words were inadvertently omitted.[8] There is nothing herein from which it can be said that either is the case. On the other hand, there are conclusive arguments in support of our view that the legislature intended to authorize the imposition of the utility tax on all "competitive utilities" services whether named or unnamed, and that specific words of limitation relating thereto were intentionally omitted.
First of all, we must assume that the legislature intended to pass a taxation statute which would only permit of a fair and equitable tax burden on those within its scope. It cannot be said, therefore, that by enacting § 167.431, supra, the legislature intended to create, or allow as a necessary incident, a favorable "competitive" position in one utility over another. Notwithstanding, the order appealed from is amenable to no other ultimate effect.
Additionally, it is a rudimentary presumption that the legislature must have intended to enact constitutionally valid legislation. Yet if it were not its intent here to permit of a tax on unnamed or unspecified utility services, provided that such utility services were ultimately shown to be "competitive", and it intentionally omitted to so allow, then the statute would be vulnerable to an assault on its constitutional validity. It may then well be said to be discriminatory as taxing one segment of a class to its detriment as against others of the same class not so taxed.[9] Not only *655 does the proviso before us, without the suggested words of limitation, patently parry such attack, but indeed, with them inserted, would give it force.
We hold, therefore, that it was the clear intent of the legislature in enacting, and repeatedly re-enacting, § 167.431, supra, to require that if a municipality chooses to impose a utility tax on the purchase of any utility service specifically named therein then such municipality shall also impose a tax in like amount on the purchase of any other utility service, whether named or unnamed, provided that such other utility service is "competitive" with the one or more such services first taxed.
Other things being equal, we would now ordinarily remand the cause for a factual determination on the issue of whether the distribution of fuel oil is in truth "competitive" and, upon an affirmative finding, direct an injunction against enforcement of the present taxing ordinance. This decision would then end here. But the existing bonded indebtedness of appellee-City of Tampa renders other things unequal, and the case is now in a singular posture.
This comes about because of the following undisputed facts. The aforesaid existing ordinance, No. 1017-A, was initially passed in 1946. Since then, at least two revenue bond issues were validated in which the utility taxes imposed thereby were pledged in repayment.[10] At least thirty million dollars worth of these bonds remain outstanding. These bonds having been validated, appellants may now be barred from attacking the validity of the ordinance by the provisions of § 75.09, F.S.A., the purpose of which is to finalize, and render res judicata, all issues which may be raised in a bond validation proceeding.
We need not now decide the effect of this statute on appellants' right to attack Ordinance No. 1017-A, however, and indeed may assume that the enforcement of the ordinance cannot be enjoined. But by holding, as we do, that appellants may be entitled to relief, justice will suffer not a right without a remedy. Accordingly, we perceive that if the city is in violation of § 167.431, supra, either, as we have suggested, by leaving the present ordinance in force or by not taxing the purchase of fuel oil, then full relief may be afforded appellants by compelling the latter instead of enjoining the former.
Parenthetically, we reiterate here that appellants ultimately pleaded for a writ of mandamus or other appropriate relief. Since we have held, then, that the city has no discretion not to tax the purchase of a "competitive" utility service if it chooses to tax the purchase of any such service expressly authorized, a determination at this time that the distribution of fuel oil is in fact "competitive" with a service now taxed would appear to render the city amenable to mandamus, or at least a mandatory injunction, compelling the imposition of such tax on the purchase of fuel oil. This is so because the city is now in no position, by virtue of its validated bond issues and contractual obligations thereunder, to deny the validity or unrepealability of the existing ordinance; hence it has no alternative course. All its discretion has been removed.
We emphasize that what we have just said is predicated upon a determination in the first instance that the distribution of fuel oil is, in fact, a "competitive utility *656 service". On this point, the city takes the position that if this court reverses, and orders a factual determination of whether the distribution of fuel oil is in fact a "competitive utility", then, it says, the proper forum to make such determination is the city itself acting within its legislative prerogatives. A necessary corollary to the questions inherent in this contention is, of course the matter of the contents of our mandate to issue herein; so we consider the merits of the city's position on the point.
Concededly, legislative prerogatives as such include the right to make legislative findings of fact. But almost all procedures utilized in performance of this function are plenary; and in any event, there is no requirement that they bear any resemblance to judicial or quasi-judicial fact finding processes.[11] Accordingly, a legislative factual determination is not usually reviewable as regards the form or procedure by which it was made. A positive finding of fact, nonetheless, will be sustained by the courts without regard to the method used to arrive thereat if such finding simply has a reasonable basis.[12]
Here, however, we are not faced with reviewing a finding of fact which was affirmatively made; rather, we have before us a complaint that alleges as true an operative fact which the city's legislative body did not affirmatively determine when it was allegedly incumbent upon them to do so. In other words, the complaint is materially bottomed on wrongful inaction of the city. Ordinarily, of course, a broad discretion is vested in municipal legislative bodies either to enact or not to enact municipal legislation on a given subject.[13] We have hereinabove noted, however, that the city in this case finds itself in a bind. Discretion here not to act in the premises has been vitiated; the city no longer has a choice but to tax the purchase of fuel oil if it is "competitive". Nevertheless, in the present posture of the case, if our mandate allows the city to make the critical determination vel non as to whether the distribution of fuel oil is a "competitive utility service", and the city peremptorily determines such fact in the negative, we'd be in the same position we're in now; that is to say, appellants could still resort to the courts, impeach the legislative finding by establishing the alleged fact as true and pray for the same relief sought here.
Conversely, if the city were to determine the critical fact in the affirmative, then such finding would be amenable to a like judicial review at the instance of fuel oil dealers, and we would still be in the same position we're in now. To put it another way, since the filing of this suit "the fat is in the fire". The interested parties are before the court, the critical issues have been properly framed and are judicially triable and the court is empowered to grant full and complete relief to the parties prevailing. Under these circumstances, all critical operative facts should be determined vel non by the trial court, not by the city.
The judgment appealed from is therefore reversed, and the cause is remanded for further proceedings not inconsistent herewith.
Reversed and remanded.
HOBSON, C.J., and LILES, J., concur.
NOTES
[1] (1948), 160 Fla. 622, 36 So.2d 209.
[2] "Each law enacted in the Legislature shall embrace but one subject and matter properly connected therewith, which subject shall be briefly expressed in the title, * * *" [Italics supplied]
[3] See, e.g., § 11.2421, F.S. 1967, F.S.A.
[4] See, e.g., Rodriguez v. Jones (Fla. 1953), 64 So.2d 278.
[5] State ex rel. Badgett v. Lee (1945), 156 Fla. 291, 22 So.2d 804.
[6] Cf., 30 Fla.Jur., Statutes, § 74.
[7] Id., § 82.
[8] See, e.g., Rose v. Town of Hillsboro Beach (Fla.App.4th 1968), 216 So.2d 258, 259.
[9] See, e.g., 16A C.J.S. Constitutional Law § 520; and cf. Louis K. Liggett Co. v. Lee (1933), 288 U.S. 517, 53 S.Ct. 481, 77 L.Ed. 929, reversing Louis K. Liggett Co. v. Amos (1932), 104 Fla. 609, 141 So. 153. On this point, appellees suggest that the due process, or equal protection question, was laid to rest in City of Orlando v. Natural Gas and Appliance Company (Fla. 1952), 57 So.2d 853, which followed Johnson, supra, and which involved another taxing ordinance enacted pursuant to the statute before us. A careful reading of the Natural Gas case, however, reveals that the court's comments relating to due process and equal protection were concerned with a failure to tax commodities which merely possessed "charactistics common" with those taxed. The relevance vel non of whether such untaxed commodities were, in fact, also "competitive" was never discussed in that case, nor for ought that appears, was it even raised by the gas company. Clearly, then, that case is not controlling authority on the due process question where it is shown that an untaxed commodity or service is indeed "competitive" with one taxed.
[10] The first series of bonds was issued and validated in 1957, and affirmed on appeal, in State v. City of Tampa (Fla. 1957), 95 So.2d 409. Another series of bonds was validated in 1962, and again affirmed on appeal, in State v. City of Tampa (Fla. 1962), 146 So.2d 100.
[11] See, 5 McQuillin, Municipal Corporations, § 16.15 (3rd ed. 1969).
[12] Cf. State ex rel. Dallas Inv. Co. v. Peace (1939), 139 Fla. 394, 190 So. 607. See, also, 6 McQuillin, Municipal Corporations, §§ 20.04-20.08 (3rd ed. 1969).
[13] Id.