271 So.2d 118 (1972)
BELCHER OIL COMPANY, a Florida Corporation, and Parman Kendall Corporation, a Florida Corporation, Appellants,
v.
DADE COUNTY, a Political Subdivision of the State of Florida, Appellee.
No. 41263.
Supreme Court of Florida.
December 20, 1972.
*120 M. Lewis Hall, Jr., of Hall & Hedrick, Miami, for appellants.
Stuart Simon, County Atty., and St. Julien P. Rosemond, Asst. County Atty., for appellee.
ROBERTS, Chief Justice.
This cause is before this Court on direct appeal from the Circuit Court of Dade County. The trial court passed directly on the constitutionality of Fla. Stat. § 167.431, F.S.A., declaring said statute to be valid. We have jurisdiction. Fla. Constitution Article V, § 4(2), F.S.A.
In 1970, the Board of County Commissioners of Dade County as the metropolitan or municipal government of the unincorporated areas of Dade County enacted Ordinance No. 70-72 to become effective October 1, 1970. This Ordinance which was enacted pursuant to Fla. Stat. § 167.431, F.S.A., provided, inter alia,
"Section 2. Rate and Amount of Excise Tax on Purchase of Public Utility Services: Collection of Tax.
"There is hereby levied and imposed by the county upon every purchase in the unincorporated area of electricity, metered gas, bottled gas, fuel oil, telephone service, telegraph service, and water service, included in or reflected by any bill rendered by the seller to the purchaser an excise tax which shall be as follows:
(1) When the seller, in accordance with his rules and regulations, renders a bill to the purchaser to cover purchases made during the period of time to which the bill is applicable the amount of excise tax shall be ten percent, exclusive of governmental charges and taxes, shown on any such bill, due and payable on account of such purchases of such total amount."
Section 167.431 authorizes municipalities to levy a tax on public services. The language of said statute pertinent to the case before this Court provides as follows:
"(1) The several cities and towns in this state are hereby given the right, power, and authority, by nonemergency ordinance, to impose, levy and collect on each and every purchase of electricity, metered or bottled gas (natural liquefied petroleum gas or manufactured), water service, telephone service and telegraph service in their corporate limits, a tax (straight percentage, sliding scale, graduated or other basis) in an amount not to exceed ten per cent of the payments received by the seller of such utility service... . In the event any such ordinance imposes such a tax on the purchase of one of the utility services described herein and a competitive utility service or services are purchased in the city or town, then such ordinance shall impose a tax in like amount on the purchase of the competitive utility service or services whether privately or publicly owned or distributed; however, telephone service and telegraph service shall not be required to be considered competitive services. Provided, however, that the city or town shall notify the seller of such utility service in writing of any change in the boundaries of the municipality or in the rate applicable to such tax.
"(2) All laws, general and special, in conflict with the provisions of this section are hereby superseded to the extent of such conflict, it being the purpose and intent of the legislature to confer the right and authority hereby granted to the several cities and towns notwithstanding any limitations or restrictions which may be contained in any general or special law; but nothing contained in this section shall be construed to affect or repeal gross receipts taxes imposed by chapter 203." (emphasis supplied)
Appellants, plaintiffs-below, Belcher Oil Company and Parman Kendall Corporation, which respectively sell and purchase *121 fuel oils within the unincorporated limits of Dade County, and which were thereby subjected to the terms of the Ordinance, filed a declaratory action on October 30, 1970, challenging the constitutionality of both the Ordinance and its enabling act, Fla. Stat. § 167.431, F.S.A. This declaratory action also challenged the authority of Dade County to impose the excise tax on fuel oils since, appellants alleged, the enabling legislation did not specifically authorize a tax on the purchase of fuel oils, by name.
The trial court found the evidence clearly showed that fuel oil service is competitive with bottled gas service, that the enabling act was clear and unambiguous that competitive services not specified by name must be taxed, citing Owen v. Cheney, 238 So.2d 650, (Fla.App. 1970). Having considered the pleadings, evidence and memorandum of law filed by each party, the trial court concluded that the Ordinance in question is valid Dade County legislation, that Fla. Stat. § 167.431, F.S.A. is valid State legislation, and therefore the appellants' complaint and cause should be dismissed with prejudice.
We agree with the trial court determination that Fla. Stat. § 167.431, F.S.A. is constitutional and does not constitute an unlawful delegation of legislative authority without objective guidelines or standards. The words competitive utility service or services are sufficient guidelines for the municipalities to determine what commodities they are authorized to tax if they in their discretion so desire.
Failure to include fuel oil in the title of the session law did not invalidate the right of the city to tax the same since the statute in question has been repeatedly reenacted materially unchanged in the biennial revisions of the Florida statutes. The rule in Florida is that all infirmities or defects in the title of a reenacted statute are cured by reenactment; and this is true whether the statute has been previously declared inoperative or not. See Rodriguez v. Jones, 64 So.2d 278, (Fla. 1953); State ex rel. Badgett v. Lee, 156 Fla. 291, 22 So.2d 804, (1945); Christopher v. Mungen, 61 Fla. 513, 55 So. 273, (1911); State v. Board of Public Instruction, 98 Fla. 66, 123 So. 540, (1929).
However, we cannot agree that Dade County was compelled or mandated by the statute to tax competitive services, but, in our opinion, municipalities are merely authorized or empowered by Fla. Stat. § 167.431, F.S.A., to levy taxes on public utilities. Whether they choose to enact an ordinance imposing such a tax is within the legislative discretion of the municipality. Because it decided to tax the aforestated utility services specifically designated in the statute, the municipality of Metropolitan Dade County cannot be mandated to levy and collect a tax on fuel oil. Constitutionally construed, the statute empowers but does not require the city to impose such a tax if the municipality in its discretion finds a particular service to be competitive. Compare City of Tampa, et al. v. Birdsong Motors, Inc. et al., 261 So.2d 1, (Fla. 1972).
We recognize the terminology employed by the Legislature in the promulgation of the statute in issue that,
"In the event any such ordinance imposes such a tax on the purchase of one of the utility services described herein and a competitive utility service or services are purchased in the city or town, then such ordinance shall impose a tax in like amount on the purchase of the competitive utility service ..." (emphasis supplied)
Although the term "shall" normally has a mandatory connotation, in proper cases and particularly so where required to conform to constitutional requirements, it may be construed as permissive only. Lomello v. Mayo, 204 So.2d 550, (Fla.App. 1967). A permissive rather than mandatory construction should be given to Fla. Stat. § 167.431, F.S.A.
*122 As the Florida Constitution and the case law of this State evidence, the State, through the legislative branch of the government, possesses an inherent power to tax, and a municipality may exercise a taxing power only to the extent to which such power has been specifically granted to it by general law. See Fla. Constitution, Article VII, § 1(a); Housing Authority of Plant City v. Kirk, 231 So.2d 522, (Fla. 1970); and City of Miami Beach v. Lansburgh, 218 So.2d 519, (Fla.App. 1969). The right to determine the subjects of taxation and exemptions therefrom is within the Legislature's prerogative in the exercise of its sovereign power. But this right is subject to the controlling constitutional limitations. Cassady v. Consolidated Naval Stores, Inc., 119 So.2d 35, (Fla. 1960). This Court has held in City of Tampa et al. v. Birdsong, supra, municipalities may not impose a particular tax unless specifically authorized by general law to do so.
In Birdsong, supra, the statutes in question, Fla. Stat. § 167.43, F.S.A., provided that,
"The city or town council may raise, by tax and assessment upon all real and personal property, and by license on professions, business and occupations carried on within the corporation, all sums of money which may be required for the improvement and good government of the city ..." (emphasis supplied)
and Fla. Stat. 212.081(3)(b), F.S.A., forbade pyramiding or duplication of excise taxes. Therein, this Court concluded that the City of Tampa was attempting to go beyond its statutory authorization since it attempted to increase its revenue by taxing sales within the city after having imposed the traditional valid license tax.
The general law, Fla. Stat. § 167.431, F.S.A., permits Dade County to tax those public utilities enumerated in the statute and to tax those services which it finds to be competitive with the specifically stated utilities, but because of constitutional limitation this is a right not an absolute obligation. If the county does find fuel oil to be competitive with bottled gas, for example, and does within its discretion choose to tax fuel oil, then it may do so. This rationale arises from interpretation of the language of the new 1968 Fla.Constitution, Article VII, § 9(a), which constitutes a substantial change in language from the 1885 Constitution, Article IX, § 5. The 1885 Constitution, supra, provided,
"... shall authorize the several counties and incorporated cities or towns in the State to assess and impose taxes for county and municipal purposes, and for no other purposes, and all property shall be taxed upon the principles established for State taxation." (emphasis supplied)
Section 9(a), Article VII, 1968 Constitution provides that,
"Counties, school districts, and municipalities shall, and special districts may, be authorized by law to levy ad valorem taxes and may be authorized by general law to levy other taxes, for their respective purposes, except ad valorem taxes on intangible personal property and taxes prohibited by this constitution." (emphasis supplied)
Under the foregoing 1968 constitutional provision, the mandatory requirement of F.S. Section 167.431, F.S.A., that a city taxing one utility service "shall impose a tax in like amount on the purchase of the competitive utility service or services" is abrogated. Cities can refuse to impose a fuel tax because under the 1968 Constitution, a city can only be authorized, not required "by general law" to impose "other taxes."
The first portion of Fla. Stat. § 167.431, F.S.A. is directory and permissive only and not mandatory. Because of the changes in the 1968 Constitution and the fact that the ordinance in question was passed after these changes became effective, the latter portion of this statute must also be read as directory and permissive *123 as relates to the particular facts of the case presently before this Court.
Although the municipality must receive the authority to levy this tax on public utilities, and services competitive thereto, from the Legislature, it has legislative discretion to determine what is competitive and whether, in fact, to impose such a tax. The First District Court of Appeal has held that the legislative body of a municipality has legislative discretion in the enactment of ordinances for the regulation, government and management of the municipal corporations. So. Daytona Restaurants, Inc. v. City of So. Daytona, 186 So.2d 78, (Fla.App. 1966).
It should be noted that the constitutional requirement of equality and uniformity as guaranteed by Article VII, Fla. Const. 1968 (previously Article IX, Fla. Const. 1885) has been held to be inapplicable to excise taxes. Gray v. Central Florida Lumber Co., 104 Fla. 446, 140 So. 320, rehearing denied 104 Fla. 446, 141 So. 604, certiorari denied 287 U.S. 634, 53 S.Ct. 18, 77 L.Ed. 536. Therein, this court held,
"Excise taxes have been imposed in many ways, but so long as they are reasonable, not unjustly discriminatory, nor arbitrary, whimsical, irrational, grossly oppressive, plainly unequal, or contrary to common right, they will be upheld... .
"Perfect equality in the operation of laws imposing a tax on real estate is recognized as impossible. It is even more difficult to arrive at uniformity in the operation of an excise tax, but mere inequality or lack of uniformity in its operation is no bar to its enforcement. It must be so arbitrary and oppressive as to clearly amount to a denial of due process or of equal protection, and where, as here, the public health and safety are not involved, the ultimate test is whether or not the excise so imposed is so arbitrary and oppressive as to prohibit a great number, if not all, persons from pursuing occupations otherwise lawful... ."
Insofar as Owen v. Cheney, Fla.App., 238 So.2d 650, writ discharged in Central Oil Co. v. Cheney, 253 So.2d 869 (Fla. 1971), may appear to be inconsistent with this opinion, the rule announced therein is modified to conform to this view. Further study of the nature of Section 9(a), Article VII, 1968 Constitution, in the light of the rationale of City of Tampa v. Birdsong Motors, Inc., supra, has convinced us of the discretionary operation of the constitutional provision.
It could be assumed from the record that the fuel oil tax was imposed because the county, pursuant to the rationale of Owen v. Cheney, supra, believed it had no discretion in the matter but was mandatorily required to impose the fuel oil tax.
Therefore, the judgment under review should be and is hereby vacated and the case remanded for further consideration by the trial court to determine whether or not the taxing authority in its free discretion intended the imposition of the tax or whether it adopted this tax under the belief that it was mandated by the state to do so.
The impact of this decision is prospective only, not retroactive, and affords no remedy for fuel oil taxes previously paid by persons not making a judicial attack on the ordinance, sub judice.
It is so ordered.
ERVIN, CARLTON and ADKINS, JJ., concur.
BOYD, J., dissents in part and concurs in part with opinion.
McCAIN, J., agrees with BOYD, J.
DEKLE, J., dissents with opinion.
BOYD, Justice (dissenting in part, concurring in part):
I dissent to that portion of the majority opinion which construes the law to include *124 classes of utility services other than those listed in the Statute. As stated in my dissent in Central Oil Co. v. Cheney,[1] taxing statutes must be strictly construed against the taxing authorities.[2] If the Legislature wanted to include utilities other than those listed in the Act, it would have so stated.
I agree with the majority that the Statute is constitutional.
Accordingly, I would affirm the holding of the trial court that Florida Statutes § 167.431 is constitutional, but reverse the holding that fuel oil, although not mentioned in § 167.431, is subject to tax under that Act.
McCAIN, J., concurs.
DEKLE, Justice (dissenting):
I must dissent on constitutional grounds. The option left to the respective Metropolitian or municipal governments of Florida "builds in" a constitutional impropriety of denial of equal protection to like utilities. The municipality or Metro is allowed to apply the tax to one utility and decline to apply it to other competitive utilities. The cities under this opinion are thus allowed arbitrarily to tax or to refuse to tax. If the tax is to be applied at all, it must not be levied arbitrarily and capriciously at the whim (or political motivation) of the city fathers.
Actually, such result is an improbability for two reasons: (1) that the hard-pressed cities of the State of Florida must probably look to all possible sources of income and therefore would tax all who are competitive, thus leaving no constitutional concern and (2) the able city attorneys and commissions over the State will recognize the hazard of such an unconstitutional undertaking to discriminate in applying the tax and thus inviting federal appeals.
Overlooked or ignored in the majority's adaptation of cited statutory and constitutional provisions in order to reach its desired result is the basic constitutional requirement of equal protection of the laws by an impartial application to all in a like or similar class, namely gas and fuel oil here, if competitive. A statute (or a court) cannot pick and choose its application without regard to constitutional requirements. The tax must fall evenly and fairly upon those classes affected or it must be entirely withheld.
Relying on Gray v. Central Florida Lumber Co.[1], the majority states that the constitutional requirement of equality and uniformity as guaranteed by Art. VII (1968) is inapplicable to excise taxes. At this point the majority opinion merely quotes a portion of Gray in reference to the fundamental constitutional principle of equality and uniformity in the Fourteenth Amendment to the United States Constitution. This token reference to the basic concept of equal protection among men without any analysis or interpretation as applied to the current factual situation before us, shakes the foundation of our system of equal justice.
Mr. Justice Terrell, speaking for a sound Gray court, did more than just mention the maxim of equality before the law by stating:
"Excise taxes have been imposed in many ways, but so long as they are reasonable, not unjustly discriminatory, nor arbitrary, whimsical, irrational, grossly oppressive, plainly unequal, or contrary to common right, they will be upheld. [citations omitted]" (emphasis added)
More importantly, this eminent jurist elaborated on this required equal protection of *125 the laws by directly applying this principle to the facts there (and it is the same here), saying:
"The power of the state to classify for purposes of taxation is of wide range and flexibility, provided that the classification must be reasonable, not arbitrary, and rests on some ground of difference having a fair and substantial relation to the object of the Legislature. All persons similarly circumstanced should be treated alike, though the state is not required to resort to close distinction or to maintain a precise scientific uniformity with reference to composition, use, or value... ." (emphasis added)
This viewpoint discussing and analyzing the basic constitutional requirement for equality and uniformity has been expressed many times by this Court. Faircloth v. Old Boston Distiller Corp., 245 So.2d 240 (Fla. 1970) authored by Roberts, Acting C.J.; and King Kole v. Bryant, 178 So.2d 2 (Fla. 1965). On this same point the case of Willis v. Morgan, 176 So.2d 73 (Fla. 1965), is particularly noteworthy because it succinctly and clearly reiterates this principle. Mr. Justice Ervin, in considering an excise tax exemption for dog tracks, said: (p. 76)
"The only requirement of `equality' and `uniformity' with which we are here concerned is that all tracks in the same class be treated similarly."
The well-established view in Gray v. Central Florida Lumber Co., supra, and subsequent cases refers to the basic constitutional principle of equal protection under the law. This paramount maxim of constitutional law applicable in this proceeding appears in the Fourteenth Amendment to the United States Constitution.[2] It is inescapable here and should be the guiding light in this cause.
True, a city should not be "mandated" to levy any tax. It need indeed levy none at all. But if it does, it must be upon all in the class affected. The Legislature recognized this basic constitutional concept in drafting Fla. Stat. § 167.431, F.S.A., under consideration here. It is the obvious reason for the second portion of the act applying to "competitive" utilities. The Legislature had no choice but to make such provision applying the law equally under the constitution, if its statute was to stand up.
The majority remands this matter to the trial judge and according to Mr. Chief Justice Roberts, the Board of County Commissioners of Dade County has the "free discretion" to impose the excise tax on utility services. I am hard put to understand why the Chief Justice could reach this decision here when he said in Cassady v. Consolidated Naval Stores Company, 119 So.2d 35 (Fla. 1960), that the power of taxation is: (p. 37)
"... subject to controlling constitutional limitations... ."
and: (p. 37)
"... as in the case of any other statute, the execution of a tax statute or the exercise of taxing powers thereby granted cannot be made to depend upon the unbridled discretion or whim of a `statutory' board or individual or group of individuals. See Richey v. Wells, 1936, 123 Fla. 284, 166 So. 817; Whitney v. Hillsborough County, supra, 99 Fla. 628, 127 So. 486, at page 493; Tarpey v. McClure, 1923, 190 Cal. 593, 213 P. 983. Cf. State ex rel. Taylor v. City of Tallahassee, 1937, 130 Fla. 418, 177 So. 719." (emphasis added)
*126 Our Chief Justice recognized the constitutional restrictions on discretionary power in Cassady by saying the exercise of discretion cannot be "unbridled"; that it is subject to "controlling constitutional limitations." Now here, the learned Chief Justice vests the Board of County Commissioners of Dade County with "free discretion" without so much as weighing the controlling constitutional limitations on discretionary power. Why are constitutional requirements applicable in Cassady and inapplicable now? The 1968 Florida Constitution did not change the basic constitutional right to "equal protection of the laws" in the Fourteenth Amendment. It still exists today.
"Unbridled discretion" and "free discretion" seem synonymous to me. If a political entity is given unbridled or free discretion, the overriding or controlling constitutional restrictions are ignored. The political body would be free to do as it chooses without regard for this basic right in our federal constitution. I cannot concur in such a result authorizing "free discretion" and disregarding the U.S. Constitution and its principles. My sense of justice does not permit any discretionary decision violating the controlling provisions of the United States Constitution.
I realize the new provision in Art. VII, § 9(a), authorizes the State Legislature to enact a general law which gives counties, districts and municipalities the power to decide whether it will pass an excise tax. However, the exercise of this power must be within the framework of basic constitutional rights. This fundamental principle cannot be ignored.
Should some cities choose an uneven levying of the tax in question, it would seem to me that the present opinion only invites an inescapable appeal under the provisions of our United States Constitution.
I must accordingly dissent.
NOTES
[1] 253 So.2d 869, 870 (Fla. 1971).
[2] City of Miami v. Kayfetz, 158 Fla. 758, 30 So.2d 521 (1947).
[1] 104 Fla. 446, 140 So. 320 (1932), rehg. den. 104 Fla. 446, 141 So. 604 (1932), cert. den. 287 U.S. 634, 53 S.Ct. 18, 77 L.Ed. 536 (1932).
[2] The equal protection guarantee in Fla. Const. art. I, § 2, is not relevant here. Appellants-corporations are not entitled to this state constitutional protection. It applies to "natural persons" only. Nevertheless, corporations (appellants) are afforded equal protection under the Fourteenth Amendment. Liggett Co. v. Lee, 288 U.S. 517, 53 S.Ct. 481, 77 L.Ed. 929 (1933).