936 So.2d 715 (2006)
SHANDS TEACHING HOSPITAL AND CLINICS, INC. and University of Florida, Board of Trustees, Appellants,
v.
Adel SIDKY, M.D., Jean Foucauld, M.D., Steven Borzak, M.D., Florida Cardiology Group, P.A., Damien Joy, M.D., Western Surgical Specialists, P.A., and Kim Ambry, as Personal Representative of the Estate of Daniel Williams, deceased, Appellees.
No. 4D06-680.
District Court of Appeal of Florida, Fourth District.
August 16, 2006.
Rehearing Denied September 20, 2006.
*716 Warren B. Kwavnick and Ronald L. Harrop of Cooney, Mattson, Lance, Blackburn, Richards & O'Connor, P.A., Fort Lauderdale, for appellants.
Shelley H. Leinicke of Wicker, Smith, O'Hara, McCoy, Graham & Ford, P.A., Fort Lauderdale, for appellees Adel Sidky, M.D. and Jean Foucauld, M.D.
James C. Blecke of Deutsch & Blumberg, P.A., Miami, and Frederick A. Gunion, Jr. of Frederick A. Gunion, Jr., P.A., Miami, for appellee Kim Ambry.
GUNTHER, J.
University of Florida Board of Trustees appeals the denial of its Motion to Dismiss and/or Transfer on the Grounds of Improper Venue. Based on our consideration of the construction of the statutory home venue privilege set forth in Florida Statutes section 768.28(1), we reverse.
Kim Ambry, as the Personal Representative of the Estate of Daniel Williams (her husband), filed suit against Adel Sidky, M.D., Jean Foucauld, M.D., Steven Borzak, M.D., Florida Cardiology Group, P.A., Damien Joy, M.D., Western Surgical Specialists, P.A., Shands Teaching Hospital and Clinics, Inc., and University of Florida Board of Trustees. Ambry asserted that jurisdiction was proper in Palm Beach County "because the Defendants are joint tortfeasors and the interests of `justice, fairness and convenience' are best served by maintaining this action in Palm Beach County" and cited Board of County Commissioners v. Grice, 438 So.2d 392 (Fla. 1983), and Florida State Lottery v. Woodfin, 871 So.2d 931 (Fla. 5th DCA 2004), in support of this contention.
*717 Ambry alleged the following facts in the complaint. Sidky was Williams's primary care physician, diagnosed him with severe valvular heart disease in June 2000, continued to treat Williams until November 2000, and never recommended valvular repair.
In July 2003, Williams presented at the Palms West Hospital Emergency Department with gallstones, and Joy planned to perform a cholecystectomy. However, the operation was cancelled because Williams was suffering from unstable angina. Two days later, Foucauld performed a cardiac catheterization and diagnosed Williams with aortic stenosis, aortic insufficiency, and a dilated left ventricle, but did not recommend aortic valve replacement. Borzak, a cardiologist, visited Williams three days later, indicated that Sidky was aware of Williams's aortic stenosis, and did not recommend aortic valve replacement. Later that day, Joy performed a cholecystectomy on Williams and prescribed Cefazolin rather than penicillin, the preferred drug to prevent infection in patients with heart disease.
From August 2003 to September 2003, Sidky resumed treating Williams for recurrent chest pain, shortness of breath, and other symptoms, but did not recommend valve replacement surgery because his aortic stenosis was not severe enough to warrant surgery. Williams also saw other specialists during this time period, all of whom were unable to diagnose the cause of his continued symptoms.
On December 11, 2003, Williams visited Shands due to worsening shortness of breath and difficulty eating. A Shands physician diagnosed Williams with congestive heart failure and admitted him to the hospital. On the morning of December 12, 2003, Williams complained of pain throughout his body and was given medication, but was not seen by a physician. Soon thereafter, Williams was found on the floor, unresponsive and hypoxic, and was unable to be resuscitated. An autopsy concluded that Williams died of aortic valve endocarditis caused by aortic stenosis.
Counts I-VI of Ambry's complaint stated negligence causes of action against Sidky, Foucauld, Borzak, Joy, and two medical groups for their failure to properly diagnose and treat Williams. Count VII alleged vicarious liability by Shands for the failure of seven of its staff physicians to properly diagnose and treat Williams. Count VIII stated a similar cause of action against Shands for the negligence of its other medical staff. Count IX stated another similar cause of action against Shands for the negligence of its residents. Count X claimed vicarious liability by UF for the negligence of the Shands staff physicians based on an affiliation agreement.
UF filed an answer to Ambry's complaint. UF denied that the defendants were joint tortfeasors and that venue was proper in Palm Beach County. UF's Tenth Affirmative Defense alleged that "the proper venue for Plaintiff's action against Defendant, [UF] does not lie in Palm Beach County. Rather, Defendant, [UF] asserts its `home venue' privilege such that venue is only proper in Alachua County, Florida."
UF simultaneously filed a Motion to Dismiss and/or Transfer on the Grounds of Improper Venue. UF asserted the following in the motion:
2. The Defendant, University of Florida, Board of Trustees is an agency or subdivision of the State of Florida. Consequently, it is entitled to assert a "home venue" privilege, that is, the right to be sued in the county where the agency maintains its principal headquarters, Alachua County. See Carlile v. Game & Fresh Water Fish Commission, 354 So.2d 362 (Fla.1977).

*718 3. Contrary to the allegations of Plaintiff's Complaint, Defendant, [UF] cannot be considered a "joint tortfeasor" with those co-defendants, who reside in Palm Beach County, Florida. Under the provisions of § 766.112(2), Fla. Stat., the doctrine of joint and several liability has been completely abrogated with regard to any claim for damages for personal injury or wrongful death arising out of medical negligence in any case against a Board of Trustees of a State University.
4. Even in the event Defendant, [UF] is considered a "joint tortfeasor" with the remaining defendants, considerations of justice, fairness and convenience, under the circumstances, require transfer of this action to Alachua County, Florida. Plaintiff's claims against the Alachua County Defendants, [UF] and Shands, involve events which are remote in place and time from the acts or omissions which give rise to Plaintiff's claim or cause of action against the Palm Beach County defendants. For example, the alleged negligence of Defendant, [UF] and Shands occurred on December 11 and 12, 2003 in Alachua County. However, Plaintiff's Complaint against the four physicians who reside in Palm Beach County, alleges acts or omissions which occurred between June 29, 2000 and September 30, 2003. See Paragraphs 32 through 39 of Plaintiff's Complaint. Furthermore, Plaintiff's claim against Defendant, [UF] alleges the negligence of seven physicians-employees of [UF]. Furthermore, Plaintiff's claim against Defendant, Shands involves the alleged negligence of a number [of] additional nurses-employees of Defendant, Shands, all of whom reside in Alachua County or its environs. Furthermore, it would entail undue hardship and inconvenience if numerous physicians-employees of [UF] were required to defend this action in Palm Beach County. Plaintiff's claims against Defendant, [UF] and Shands are so intertwined, however, that these claims should be tried together.
UF requested that Ambry's complaint be dismissed for improper venue, that the case be transferred to Alachua County, or that at least the claims against UF and Shands be severed and transferred to Alachua County.
Shands also filed a Motion to Transfer Venue. Shands sought the transfer of venue from Palm Beach County to Alachua County based on Florida Statutes section 47.122, addressing forum non conveniens. Shands requested that the trial court enter an order transferring the case to Alachua County or severing Shands and UF from the case against the Palm Beach County defendants.
Ambry filed a response to Shands and UF's venue motions. Ambry contended that Board of County Commissioners of Madison County v. Grice, 438 So.2d 392, 394 (Fla.1983), established exceptions to the home venue privilege, including when the action involves joint tortfeasors. Ambry also maintained that the fact that Shands and UF relied on the statutory home venue privilege rather than the common law home venue privilege was a distinction without significance to the applicability of Grice based on Florida State Lottery v. Woodfin, 871 So.2d 931 (Fla. 5th DCA 2004). Finally, Ambry asserted that severance of the claims against Shands and UF was inappropriate because the effect of the defendants' care is interrelated.
*719 The trial court held a hearing on the venue motions. Counsel for UF and Shands contended that the joint tortfeasor exception did not apply in the case at bar because under Florida Statutes section 766.112, neither can be considered joint tortfeasors. When asked by the trial court, Ambry's counsel stated his belief that Florida Statutes section 768.28 is subject to Grice. Counsel for UF and Shands responded:
Point number two, the Court asked the question does the Grice exception for joint tortfeasors apply to a statutory home venue privilege. Well, the answer has unfortunately been addressed adverse to my position in the [Florida State Lottery v. Woodfin] case. It's a Fifth DCA case, [871 So.2d 931]. In that case, the Court held under a similar home venue provision for the State Lottery Commission that Grice still applied. I think that case is wrongly decided, but that is the case. There is no other case contradicting that so it's probably binding precedent on this Court.
Following the hearing, the trial court entered an Order on Defendant University of Florida Board of Trustee's Amended Motion to Dismiss and/or Transfer for Improper Venue. The trial court reached the following conclusions:
This is a medical malpractice action filed by the Plaintiff against [UF] as well as a number of other medical providers, all of whom other than [UF] are located in Palm Beach County, Florida. [UF] has moved to transfer venue or to dismiss based upon its claimed "home venue" privilege pursuant to Florida Statutes Section 766.11 and Florida Statutes Section 768.28. As set forth by the Supreme Court in Board of County Commissioners of Madison County v. Grice, 438 So.2d 392, 394 (Fla.1983), the home venue privilege is not absolute and under certain circumstances the beneficial purposes of this privilege are not furthered. This is specifically true, as in the present case, when there are alleged "joint tortfeasors". While under statute, [UF] may not be "joint and severally liable" with the remaining defendants, the jury in this case will be required to apportion liability between the respective defendants. Therefore, severance of the lawsuits would not be beneficial and would not minimize expenditure of public funds, manpower, etc. Likewise, the majority of witnesses and Defendants are located in Palm Beach County, and the cost associated with transferring all of those Defendants to Alachua County would not promote fairness, convenience and justice.
Therefore, under the discretion afforded the trial court pursuant to Grice, supra, this Court holds that applying the principles set forth in Grice that circumstances of the current case do not promote the public policy behind the "home venue" privilege and the case is better tried in Palm Beach County. Therefore, the Defendant [UF's] Motion to Dismiss and/or to Transfer for Improper Venue is hereby denied.
Before turning to the merits of this appeal, we address two preliminary matters. First, we do not reach the issue of whether the case against Shands should be transferred or severed, because Shands's forum non conveniens motion was not ruled upon by the trial court and Shands presents no appealable order to this Court. Second, we conclude that UF preserved this issue for appellate review by counsel's comments that the Fifth District case of Woodfin had been decided "adverse to [its] position" and that the case was "wrongly decided."
We now turn to the merits of this appeal. "It has long been the established common law of Florida that venue in civil *720 actions brought against the state or one of its agencies or subdivisions, absent waiver or exception, properly lies in the county where the state, agency, or subdivision maintains its principal headquarters." Carlile v. Game & Fresh Water Fish Comm'n, 354 So.2d 362, 363-364 (Fla. 1977). "Such a rule promotes orderly and uniform handling of state litigation and helps to minimize expenditure of public funds and manpower." Id. at 364.
Following Carlile, in Board of County Commissioners of Madison County v. Grice, 438 So.2d 392, 395 (Fla.1983), the Florida Supreme Court explored whether there were exceptions to the common law home venue privilege, and wrote:
[T]he objective of minimizing public expenditures in the operation of the courts is not furthered when the home venue privilege results in multiple lawsuits. We therefore hold, as did the district court that home venue privilege for government entities is not absolute.
We hold further that a trial court has discretion to dispense with the home venue privilege when a governmental body is sued as a joint tortfeasor. The exercise of this discretion must be guided by considerations of justice, fairness, and convenience under the circumstances of the case. In its discretion the trial court may retain the entire case, sever and transfer the cause of action against the entity asserting the privilege if it is severable, or transfer the entire case. The home venue privilege, although not absolute, should be given substantial consideration in this process along with the other circumstances presented and the interests of the other parties.
Id. at 395. In reaching this decision, despite not being asked to review any statutory home venue privilege, the court noted that "[t]here is a modern trend ... toward allowing exceptions to such statutory requirements where government bodies are sued as joint tortfeasors." Id. at 394.
Thereafter, in 2002, the Legislature amended a statutory home venue privilege, Florida Statutes section 768.28(1), to address university boards of trustees:
In accordance with s. 13, Art. X of the State Constitution, the state, for itself and for its agencies or subdivisions, hereby waives sovereign immunity for liability for torts, but only to the extent specified in this act. Actions at law against the state or any of its agencies or subdivisions to recover damages in tort for money damages against the state or its agencies or subdivisions for injury or loss of property, personal injury, or death caused by the negligent or wrongful act or omission of any employee of the agency or subdivision while acting within the scope of the employee's office or employment under circumstances in which the state or such agency or subdivision, if a private person, would be liable to the claimant, in accordance with the general laws of this state, may be prosecuted subject to the limitations specified in this act. Any such action may be brought in the county where the property in litigation is located or, if the affected agency or subdivision has an office in such county for the transaction of its customary business, where the cause of action accrued. However, any such action against a state university board of trustees shall be brought in the county in which that university's main campus is located or in the county in which the cause of action accrued if the university maintains therein a substantial presence for the transaction of its customary business.
In this appeal, UF contends that the trial court erred by applying the Grice joint tortfeasor exception to the statutory *721 home venue privilege set forth in section 768.28(1), largely based on the mandatory language of the statute and the fact that no exceptions to the privilege are included in the statutory text. Ambry, Sidky, and Foucauld, the only appellees actively involved in this appeal, maintain that based on Woodfin, the Grice joint tortfeasor exception applies to the statutory home venue privilege set forth in section 768.28(1).
Focusing on whether exceptions to the statutory home venue privilege are provided for in the text of section 768.28(1) does not provide us with any convincing guidance regarding whether the Grice joint tortfeasor exception applies to the privilege. UF contended that because Grice was decided before the university board of trustees amendment to section 768.28(1), the Legislature was aware of the joint tortfeasor exception and could have included it if it was intended to apply, rather than using mandatory language that could be interpreted to foreclose all exceptions to the statutory home venue privilege. On the other hand, the appellees asserted that because the Legislature was aware of the Grice joint tortfeasor exception and other actual and potential exceptions to the common law home venue privilege, it was incumbent on the Legislature to exclude these exceptions in the text of section 768.28(1) if they were not intended to apply. Both the positions of UF and the appellees are viable and the intent of the Legislature is unclear on this basis, so it is apparent that the answer to the statutory conundrum presented by this issue lies elsewhere.
The language of section 768.28(1) includes the following two sentences of importance for resolving the issue presented on appeal:
Any such action may be brought in the county where the property in litigation is located or, if the affected agency or subdivision has an office in such county for the transaction of its customary business, where the cause of action accrued. However, any such action against a state university board of trustees shall be brought in the county in which that university's main campus is located or in the county in which the cause of action accrued if the university maintains therein a substantial presence for the transaction of its customary business.
At first glance, these two sentences seem largely identical in nature in that they both provide for a statutory home venue privilege permitting an action to be brought in the county where the agency has its headquarters or where the cause of action accrued if that county contains an office transacting the customary business of the agency. However, there are two significant differences between the sentences, the distinction between the use of the words "may" and "shall" and the use of the introductory transition "however."
The distinction between "may" and "shall" has often been discussed in Florida cases. "The word `may' when given its ordinary meaning denotes a permissive term rather than the mandatory connotation of the word `shall.'" The Florida Bar v. Trazenfeld, 833 So.2d 734, 738 (Fla. 2002). Additionally, regarding "shall":
The use of the word "shall" is generally mandatory, although it may be merely directory under appropriate circumstances. See Belcher Oil Co. v. Dade County, 271 So.2d 118 (Fla.1972). Its interpretation depends upon the context in which it is found and upon the intent of the legislature as expressed in the statute. See S.R. v. State, 346 So.2d 1018 (Fla.1977). Generally, "shall" is interpreted to be mandatory where it refers to some action preceding the possible deprivation of a substantive right and directory where it relates to some *722 immaterial matter in which compliance is a matter of convenience. See Neal v. Bryant, 149 So.2d 529 (Fla.1962).
Kinder v. State, 779 So.2d 512, 514 (Fla. 2d DCA 2000). Additionally, "however" is a transition employed to contrast. See Laurel Currie Oates, et al., The Legal Writing Handbook 613-614 (3d ed.). As such, the use of "however" in section 768.28(1) indicates that the meaning and operation of each of the two sentences is intended to be different.
As such, although the Legislature did not clearly express its intent regarding the application of exceptions, including the Grice joint tortfeasor exception, to the statutory home venue privilege set forth in section 728.28(1), its intent can be gleaned from the construction of the statute. The first sentence employs the permissive word "may" and was drafted before the Grice joint tortfeasor exception was adopted. The second sentence employs the mandatory word "shall" and was drafted after the Grice tortfeasor exception was adopted. The use of the word "however" as a transition between the sentences indicates that the Legislature recognized that the landscape on which the statutory home venue privilege operates changed with the adoption of the Grice joint tortfeasor exception. Although the state agencies addressed in the first sentence using "may" are not always protected by the statutory home venue privilege, such as potentially when an exception, such as the Grice joint tortfeasor exception, applies, the Legislature made certain to close the door to exceptions left open by the combination of "may" and the subsequent development of the Grice exception when university boards of trustees are defendants. In the second sentence, the Legislature indicates that notwithstanding the fact that the state agencies addressed in the first sentence might potentially lose their statutory home venue privilege where an exception applies, that is not to be the case for university boards of trustees, for which the statutory home venue privilege is always to apply without exception. Consequently, we conclude that the Grice joint tortfeasor exception does not apply to section 768.28(1) based upon the context of the sentences and "the intent of the legislature as expressed in the statute." Therefore, venue in the case at bar was proper only in Alachua County, so that UF's venue motion should have been granted.
In reaching this conclusion, we recognize that Woodfin involved a statute that also employed the mandatory language of "shall." However, that statute, Florida Statutes section 24.110, did not involve two sentences providing home venue privileges yet differentiating between them as in the present case. In the present case, section 768.28(1) not only employs the mandatory construction of "shall," but it also indicates that this structure exists notwithstanding the permissive construction of "may" in the preceding sentence, a construction which might permit exceptions to the statutory home venue privilege. In closing the door to exceptions to section 768.28(1) for university boards of trustees, the Legislature not only put a lock on the door ("shall"), but added a deadbolt ("however") to secure the statute against any intruder that might hope to pry open the door just enough to let an exception slide through and upset the statutory home venue privilege.
In sum, we hold that the Grice joint tortfeasor exception does not apply to section 768.28(1) based on the construction of the statute. Consequently, venue in the case at bar for UF is proper only in Alachua County, and UF's venue motion should have been granted. We reverse and remand for further proceedings consistent with this opinion, at which time the *723 trial court should consider whether to transfer the entire action to Alachua County or sever the action into Palm Beach County and Alachua County parts (a matter not considered by this Court). Further, we note that although we are reversing the trial court's denial of UF's venue motion, the trial court was bound to follow Woodfin, because Woodfin was the only case addressing the application of the Grice joint tortfeasor exception to a statutory home venue privilege. See Progressive Express Ins. Co. v. Devitis, 924 So.2d 878, 880 (Fla. 4th DCA 2006)("[I]n the absence of conflicting decisions, a decision of the district court of appeal is binding in all Florida trial courts.").
Reversed.
HAZOURI and MAY, JJ., concur.